THE NEW JERSEY PHARMACEUTICAL ASSOCIATION, A
CORPORATION OF NEW JERSEY, *ET AL.*, PLAINTIFFS,
v. DAVID D. FURMAN, ATTORNEY GENERAL OF NEW
JERSEY, *ET AL.*, RESPONDENTS.

THE NEW JERSEY PHARMACEUTICAL ASSOCIATION, A
CORPORATION OF NEW JERSEY, *ET AL.*, PLAINTIFFS-
APPELLANTS, v. DAVID D. FURMAN, ATTORNEY
GENERAL OF NEW JERSEY, *ET AL.*, DEFENDANTS-
RESPONDENTS.

THE NEW JERSEY PHARMACEUTICAL ASSOCIATION, A
CORPORATION OF NEW JERSEY, *ET AL.*, PLAINTIFFS-
APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE OF
THE STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS-
RESPONDENTS.

Argued May 23, 1960—Decided June 28, 1960.

*Mr. Leon S. Milmed* argued the cause for the appellants (*Messrs. Milmed & Feder,* attorneys; *Mr. Melvin Gittleman,* on the brief).

*Mr. David D. Furman,* Attorney General, argued the cause for the respondents (*Mr. William L. Boyan,* Deputy Attorney General and *Mr. Edwin C. Landis, Jr.,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

JACOBS, J. The plaintiffs, the New Jersey Pharmaceutical Association and three individual pharmacists, filed a petition for declaratory judgment under *R. R.* 4:88-10 and two appeals under *R. R.* 4:88-8, all primarily designed to obtain a judicial declaration of the invalidity of Executive Directive No. 4, issued by Attorney General Furman on October 19, 1959 and reading as follows:

"Effective this date, there is hereby established a Bureau of Inspectors within the Division of Professional Boards to handle all inspectional and law enforcement activities for the Division. All Inspectors or Confidential Agents currently assigned to the Division are hereby transferred into this Bureau under the supervision of a Chief Inspector."

The proceedings were consolidated in the Appellate Division and we thereafter certified them on our own motion. No point has been made as to the procedure and we shall not concern ourselves with it. See *Carls v. Civil Service Commission of N. J.,* 17 *N. J.* 215, 220 (1955). Nor shall we deal at any length with the contention that the plaintiffs lack standing to maintain their proceedings. The petition

for declaratory judgment alleged that the plaintiff Association is a state-wide organization of registered pharmacists "concerned with and interested in the maintenance and advancement of high professional standards," that one of the individual plaintiffs is president of the Association, that another is a citizen and taxpayer of New Jersey and secretary of the Association, and that another is a citizen and taxpayer of New Jersey and the owner of real property in New Jersey. For present purposes, we may assume that the plaintiffs have sufficient standing within the broad concepts heretofore expressed by our courts. See *Kozesnik v. Montgomery Twp.,* 24 *N. J.* 154, 177 (1957); *Salomon v. Jersey City,* 12 *N. J.* 379, 383 (1953); *Koch v. Borough of Seaside Heights,* 40 *N. J. Super.* 86, 93 *(App. Div.* 1956), affirmed 22 *N. J.* 218 (1956); *Haines v. Burlington County Bridge Commission,* 1 *N. J. Super.* 163, 170 *(App. Div.* 1949); *cf. New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Association,* 22 *N. J.* 184 (1956); *Greenspan v. Division of Alcoholic Beverage Control,* 12 *N. J.* 456 (1953).

In 1959 the Department of Law and Public Safety gave extensive consideration to an integration program which envisioned the establishment of a single Bureau of Inspectors within the Department's Division of Professional Boards and the transfer to that Bureau, under the supervision of a Chief Inspector, of all of the inspectors employed by the various boards within the Division. The Attorney General, as head of the Department of Law and Public Safety, conferred with the other interested governmental agencies, including the Department of Civil Service, the Department of the Treasury and the various boards in the Department's Division of Professional Boards, and submitted for their consideration his proposal for the establishment of a centralized bureau of inspectors. At a meeting with representatives of the various boards, held on August 11, 1959, the Attorney General pointed out that under the existing system one of the professional boards had six inspectors, others had two inspectors,

others had one inspector and some had none; that much of the time of the inspectors was devoted to travelling since their duties encompassed the entire State; that in many instances the limited number of inspectors handling a particular profession "became so well-known throughout the profession as to lose their effectiveness" and that in certain professions the presence of the inspector in a particular area was "made known to all of the licensees in that area by means of a warning system." The Attorney General expressed the view that under a centralized plan of inspectors, a warning system would "no longer be effective in that the same individual would not be handling all violation cases or inspections for a particular profession at all times." He expressed the further view that his proposed plan would increase efficiency, would result in substantial savings, and would "offer tremendous protection to the public as a whole, providing proper policing of all the professions to the extent that assurances would be forthcoming indicating that persons practicing professions are duly licensed, qualified, and entitled to do so."

At the conclusion of the meeting of August 11, 1959, the Attorney General requested the representatives to report to their respective boards and to submit to him any comments, recommendations or opinions concerning his proposed plan. The record before us does not suggest that there was any opposition voiced by any of the boards to the Attorney General's plan; and it affirmatively discloses that the board with which we are particularly concerned in these proceedings, namely the Board of Pharmacy, met on October 15, 1959 and its members "unanimously agreed to support the plan of Attorney General Furman in creating this Bureau of Inspectors." On November 19, 1959 the Department of Civil Service formally approved the abolition of the positions held by the two inspectors employed by the Board of Pharmacy and the transfer of the inspectors to the newly created positions in the Division of Professional Boards and on November 20, 1959 the Department of the Treasury gave

its formal approval. The appeals taken by the plaintiffs under *R. R.* 4:88–8 were from these actions by the Department of Civil Service and the Department of the Treasury.

■ The plaintiffs attack the creation of the centralized Bureau of Inspectors and the transfer to it of the various inspectors, particularly the two employed by the Board of Pharmacy, as lacking statutory basis and as violative of *R. S.* 45:14–5 and *Chapter* 439 of the *Laws of* 1948 (*N. J. S. A.* 52:17*B*–1 *et seq.*). *R. S.* 45:14–5 simply provides that the Board of Pharmacy "may employ suitable persons as inspectors." It does not obligate the board to employ inspectors and we fail to see how the abolition of the positions held by the board's inspectors and the transfer of the inspectors to the centralized Bureau of Inspectors, all with the board's approval, may be said to run counter to *R. S.* 45:14–5. In any event, the later and really controlling act is *Chapter* 439 of the *Laws of* 1948 which has been dealt with extensively in the briefs of the parties. That act was one of the reorganization acts which implemented the 1947 Constitution. It established in the executive branch of State government a principal department known as the Department of Law and Public Safety and headed by the Attorney General. *L.* 1948, *c.* 439, §§ 1 and 2; *N. J. S. A.* 52:17*B*–1 and 2. Section 3 of the Act established, within the Department of Law and Public Safety, various divisions including a Division of Professional Boards, and provided that the Attorney General shall have the authority to organize and maintain in his offices "an Administrative Division" and to assign to such Division such secretarial, clerical and other assistants in the Department as his office and the internal operations of the Department shall require. See *N. J. S. A.* 52:17*B*–3. Section 4 provided that the Attorney General, in addition to the functions, powers and duties specifically conferred upon him, shall have, *inter alia,* general responsibility for the Department's operations and shall "supervise the organization of the department and changes in the organization thereof, except that the divisions, bureaus,

boards, and offices herein specifically provided shall be maintained." *N. J. S. A.* 52:17B-4.

Section 27 provided that the Attorney General shall, after consultation with the heads of the several Divisions in the Department, develop and from time to time revise, "a program designed to accomplish the greatest possible efficiency of departmental operations." It further provided that he shall, subject to the approval of the Governor, "co-ordinate the inspectional and law enforcement activities of the department, and the several divisions and other agencies therein, in a manner designed to eliminate overlapping and duplicating functions" and "integrate within the department, so far as practicable, all staff services of the department and of the several divisions and other agencies therein." *N. J. S. A.* 52:17B-27. Section 30 provided that subject to the provisions thereinafter set forth "each of the respective boards within the Division of Professional Boards established hereunder shall continue to have all of the powers and shall exercise all of the functions and duties vested in, or imposed upon, it by law." *N. J. S. A.* 52:17B-30. Section 35 provided that in addition to other powers and duties specifically conferred upon the Attorney General he shall "exercise general supervision over the work of the employees engaged in the Division of Professional Boards or any of the boards therein," shall "adopt, so far as practicable, after consultation with the boards within the Division of Professional Boards, uniform procedures for all secretarial, recording and clerical duties of each of such boards," and shall "provide for the maintenance, by each of the respective boards within the Division of Professional Boards, of a public register of persons licensed by such board." *N. J. S. A.* 52:17B-35.

The Attorney General forcefully contends that *Chapter* 439 of the *Laws of* 1948 affords ample statutory basis for the creation of the centralized Bureau of Inspectors and the transfer to it of the inspectors. In particular, he stresses Section 4, which expressly vests in him the general re-

sponsibility for the Department's operations and for supervision of the organization of the Department and changes therein, and Section 27, which expressly provides that he shall develop a program designed to accomplish the greatest possible efficiency in departmental operations, and which grants to him the power to coordinate the inspectional and law enforcement activities of the Department and its Divisions with a view towards eliminating overlapping and duplicating functions, and to integrate within the Department, so far as practicable, the staff services of the Department and its Divisions. And he places additional reliance on Section 2, which constitutes him the head of the Department of Law and Public Safety, and Section 35 which provides that he shall exercise general supervision of the work of the employees engaged in the Division of Professional Boards.

In opposing the Attorney General's contention, the plaintiffs rely on Section 30 which provides that "subject to the provisions hereinafter set forth" each board within the Division of Professional Boards shall continue to have all of the power and shall exercise all of the duties vested in it by law, and on Section 33 which provides that the authority vested in any of the boards to employ or remove any officer or employee shall continue to be exercised by the board, provided, however, that the employment and removal shall be subject to the approval of the attorney general. They contend that in view of the terms of Section 30 all the preceding sections, such as Sections 4 and 27, are inapplicable to the Division of Professional Boards. If the Act is to be viewed in its entirety and fair effect is to be given to all of its terms (*Jersey City v. Dept. of Civil Service*, 7 *N. J.* 509, 520 (1951)), this contention must be rejected. Nothing in Sections 4 and 27 excludes the Division of Professional Boards from their scope; on the contrary the direction in Section 4 that "the divisions, bureaus, boards, and offices herein specifically provided shall be maintained" refers broadly to all of the Divisions in the De-

partment and to the boards within the Division of Professional Boards and the two references in Section 27 to the Department and "the several divisions and other agencies therein" are comprehensive and all-inclusive. Other sections prior to Section 30 contain express references to the Division of Professional Boards. Section 3 establishes, within the Department of Law and Public Safety, "a Division of Professional Boards" and Section 29 transfers the functions, powers, duties, records and property of designated boards "to the Division of Professional .Boards established hereunder in the Department of Law and Public Safety." It is significant that when expressly providing, in the later Section 35, that the Attorney General shall exercise general supervision of the work of the employees engaged in the Division of Professional Boards or any of the boards therein, the Legislature took pains to direct that such authority in the Attorney General shall be "in addition to other powers and duties specifically conferred and imposed upon him by this act or by any other law." See *N. J. S. A.* 52 :17*B*–35.

Section 33, upon which the plaintiffs place reliance, continues the authority of the boards in the Division of Professional Boards to appoint, employ and remove officers and employees, subject to the approval of the Attorney General. It does not impose any obligation on the boards to employ inspectors, and may not here be viewed as prohibiting the Attorney General from creating the centralized Bureau of Inspectors and transferring the inspectors to it. It must be borne in mind that we are not at all concerned with a situation in which one of the boards, or for that matter one of the inspectors, has voiced objection to the Attorney General's action and has sought judicial relief setting it aside. Insofar as the record before us indicates, the boards are content to operate within the Attorney General's program and do not seek under Section 33 to employ inspectors to function outside of it. Similarly, the boards have voiced no

objection to the program's financing which evidently entails certain transfers in their budgetary accounts to the Department's Administrative Bureau and we find no present occasion to deal with budgetary issues. *Cf. N. J. S. A.* 52:17B–37–40.

The plaintiffs contend that the legislative history of *L.* 1948, *c.* 439 and its contemporaneous construction support their position that the Attorney General exceeded his lawful authority in creating the centralized Bureau of Inspectors and transferring to it the inspectors employed by the boards in the Division of Professional Boards. Courts may, of course, freely refer to legislative history and contemporaneous construction for whatever aid they may furnish in ascertaining the true intent of the legislation. See *Lloyd v. Vermeulen,* 22 *N. J.* 200, 206 (1956); *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 585 (1955); *State Department of Civil Service v. Clark,* 15 *N. J.* 334, 341 (1954); *In re Hudson County,* 106 *N. J. L.* 62, 75 (*E. & A.* 1928). The judicial goal is to carry out fairly the legislative purpose and plan, and history and contemporaneous construction may well furnish important light as to that purpose and plan. See *Board of National Missions v. Neeld,* 9 *N. J.* 349, 358 (1952) (concurring opinion).

*L.* 1948, *c.* 439 originated in *Senate Bill No.* 27 which provided for the establishment of the Department of Law and Public Safety. That bill contemplated that the Attorney General, as head of the Department, would, in the interests of efficiency and economy, have broad power to supervise and coordinate the enforcement activities of the various divisions placed within the Department. The bill did not then include the Division of Professional Boards which had been placed by *Senate Bill No.* 23 within the Department of State. Objections to *Senate Bill No.* 23 were voiced by the boards, which had been allocated to the Division of Professional Boards within the Department of State, on the ground that their autonomy might be impaired.

Thereafter the Division of Professional Boards was placed, by a committee substitute for *Senate Bill No. 27*, in the Department of Law and Public Safety; the committee substitute later became *L.* 1948, *c.* 439, bearing the pertinent provisions cited earlier in this opinion. Although the autonomy of the boards was the subject of considerable discussion, there apparently was never any specific discussion as to the extent of the Attorney General's power to coordinate the inspectional forces of the various boards in the Division of Professional Boards. The Attorney General's predecessors never submitted any plan of coordination but their inaction presumably meant that they saw no need for it and does not constitute any contemporaneous construction as to the scope of their statutory authority. When the present Attorney General considered that the interests of efficiency and economy imperatively called for coordination, he took pains to respect the generally autonomous nature of the various boards in the Division of Professional Boards by consulting with them and by proceeding only after it appeared that they would voice no objections. We need not consider what the legal consequences would have been if objections had been voiced by any of the boards or what the legal consequences will be if one of the boards hereafter seeks to set aside the Attorney General's action, for those cases are not now before us for adjudication. For present purposes we need only determine that, in acting as he did with the consent or acquiescence of the boards in the Division of Professional Boards, the Attorney General did not exceed his authority or violate any statutory provision or any legislative design bearing upon the generally autonomous nature of the boards within the Division of Professional Boards.

The plaintiffs' petition for a declaration that Executive Directive No. 4 is invalid and for other incidental relief is denied and the actions of the Department of Civil Service and the Department of the Treasury appealed from are:
Affirmed.

132

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.