58 N.J. 98 (1971)
275 A.2d 433
CRESCENT PARK TENANTS ASSOCIATION, A NONPROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
REALTY EQUITIES CORP. OF NEW YORK AND R.E. MATAWAN CORP., A WHOLLY OWNED SUBSIDIARY OF REALTY EQUITIES CORP. OF NEW YORK, DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued January 26, 1971.
Decided March 22, 1971.
*99 Mr. Carl R. Soller argued the cause for appellant (Messrs. Barr, Kaplus, Cohen & Friedland, attorneys; Mr. Jerry N. Friedland, on the brief).
Mr. Gerald A. Liloia argued the cause for respondents (Messrs. Riker, Danzig, Scherer & Brown, attorneys; Mr. Alvin Weiss, of counsel).
The opinion of the Court was delivered by JACOBS, J.
The Chancery Division dismissed the plaintiff's complaint for lack of standing. An appeal was taken to the Appellate Division and we certified before argument there.
The plaintiff Association is a nonprofit organization which was incorporated in 1969 pursuant to the terms of N.J.S.A. 15:1-1 et seq. It was created for the protection and mutual benefit of the tenants residing in the Crescent Apartment House located at 320 South Harrison Street, East Orange. Its membership consists of a substantial majority of the tenants and it has undertaken to represent them with respect to their common grievances against their landlord the defendant R.E. Matawan Corp. and its parent company the defendant Realty Equities Corp. of New York.
The Crescent Apartment House is a high-rise luxury apartment with 252 residential units including several professional and business suites. The monthly rentals range between $285 and $700 per month for 1, 2 and 3 bedroom *100 apartments and the approximate annual rental roll predicated on 98% occupancy is $1,300,000. For the most part the tenants are middle aged or older businessmen, widows or widowers who were former homeowners in the Essex County area. They assert, through their Association, various mismanagement charges all of which have a common relationship to the tenant body as a whole. Thus it is alleged, inter alia, that the air conditioning system is in a constant state of disrepair and that its condition is particularly dangerous because many of the tenants are elderly; that the elevators are in poor working condition and constitute a safety hazard; that the security and protection afforded is wholly inadequate; that the incinerator rooms constitute a health and fire hazard; that the air conditioning and heating units generate incessant noises and disturbances; that the halls, incinerator rooms, elevators and laundry rooms, along with the basement and swimming pool areas, have been woefully neglected and are desperately in need of attention; and that repair services required on the breakdown of appliances and on the appearance of structural deficiencies have been repeatedly withheld.
The complaint prays for injunctive relief, for the appointment of a rent receiver, for an accounting, and for such other equitable relief as may be just and proper. Affidavits accompanying the complaint verified its allegations in detail. Answering affidavits, referring to corrective action which has been taken and denying the allegations of mismanagement, were filed on behalf of the defendants who moved for an order dismissing the complaint on the ground that the plaintiff Association had no interest in the matter and no standing to sue. After considering briefs and hearing argument, the Chancery Division judge dismissed the complaint on the stated ground. He did not pass on the merits and the single issue presented by the parties on appeal is whether he erred in his holding that the Association had no legal or equitable standing to maintain an action based on the alleged wrongful conduct set forth in the complaint. Compare *101 Hudson Bergen County Retail Liquor Stores Association v. Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947) and Greenspan v. Division of Alcoholic Beverage Control, 12 N.J. 456, 459 (1953) with New Jersey Bankers Association v. Van Riper, 1 N.J. 193, 196-197 (1948); see New Jersey State Bar Association v. Northern New Jersey Mortgage Associates, 22 N.J. 184, 196 (1956); New Jersey Pharmaceutical Association v. Furman, 33 N.J. 121, 123-124 (1969); Jaffe, Judicial Control of Administrative Action 542-43 (1965).
The New Jersey cases have historically taken a much more liberal approach on the issue of standing than have the federal cases. See Walker, Inc. v. Stanhope, 23 N.J. 657 (1957); Jaffe, supra at 535-36. However, in the isolated case of New Jersey Bankers Association v. Van Riper, supra, upon which the defendants and the Chancery Division judge placed reliance, this Court denied standing to an association of bankers, citing only Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., 133 F.2d 101 (8 Cir. 1942), a case which has been criticized or departed from in several later cases (Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770 (8 Cir. 1966); Noerr Motor Frgt., Inc. v. Eastern Railroad Presidents Conf., 273 F.2d 218 (3 Cir. 1959), rev'd on other grounds, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); Cooperative De Seguros Multiples De Puerto Rico v. San Juan, 294 F. Supp. 638 (D.P.R. 1968)) and which has probably been swept away by the recent Supreme Court decisions broadening the federal approach to standing. See Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed. 2d 192 (1970); Davis, Administrative Law, Ch. 22, p. 702 (1970 Supp); Jaffe, "Standing Again," 84 Harv. L. Rev. 633 (1971); Hennigan, "The Essence of Standing: The Basis of a Constitutional Right to be Heard," 10 *102 Ariz. L. Rev. 438 (1968); Note, "Judicial Review of Agency Action: The Unsettled Law of Standing," 69 Mich. L. Rev. 540 (1971).
In Flast the Supreme Court upheld a federal taxpayer's standing to maintain an action to enjoin expenditures of federal funds under a statute which allegedly conflicted with the establishment and free exercise clauses of the first amendment. 392 U.S. at 85, 88 S.Ct. at 1945, 20 L.Ed.2d at 953. So far as our own State doctrine is concerned, the standing of a taxpayer to attack illegal disbursements of public funds or other illegal official action has been long and firmly established. See Ferry v. Williams, 41 N.J.L. 332, 337 (Sup. Ct. 1879); Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 170-173 (App. Div. 1949); Piscitelli v. Tp. Committee of Tp. of Scotch Plains, 103 N.J. Super. 589, 593 (Law Div. 1968). However in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the Supreme Court dismissed, for lack of standing, a federal taxpayer's suit challenging the constitutionality of the statute commonly called the Maternity Act. In Flast the Supreme Court departed from Frothingham's restrictive approach to standing, at least in cases where the taxpayer specifically alleges that "congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power." 392 U.S. at 106, 88 S.Ct. at 1955, 20 L.Ed.2d at 965.
In Data Processing the plaintiffs, sellers of data processing services to businesses generally, challenged a ruling by the Comptroller of the Currency which permitted national banking institutions to make their data processing services available to other banks and their customers. The District Court dismissed the action for lack of standing and this was affirmed by the Court of Appeals. However, the Supreme Court reversed in an opinion by Justice Douglas which held that the plaintiffs had standing since (1) they alleged that the challenged action had caused them "injury in fact, *103 economic or otherwise" and (2) the interest sought to be protected was "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 152-153, 90 S.Ct. at 829, 25 L.Ed.2d at 187-188. Justices Brennan and White readily agreed that the plaintiffs had standing but expressed the view that the allegation of "injury in fact, economic or otherwise" was entirely sufficient without the additional inquiry called for by Justice Douglas. 397 U.S. at 170-173, 90 S.Ct. at 839-842, 25 L.Ed.2d at 202-203. In Elizabeth Federal Savings & Loan Association v. Howell, 24 N.J. 488 (1957), we upheld the standing of a savings and loan institution to attack the Banking Commissioner's grant of permission to another institution to establish a branch office; Chief Justice Vanderbilt's opinion in that case embraced a realistic and commonsensible approach to standing at least as broad as that taken by Justices Brennan and White in Data Processing. 24 N.J. at 499-504; see also Walker, Inc. v. Stanhope, supra, 23 N.J. at 663-666.
In Barlow the Supreme Court upheld the standing of tenant farmers to challenge certain regulations promulgated by the Secretary of Agriculture. The tenants alleged that they had suffered injury in fact and, as the opinion of Justice Douglas pointed out, there was no doubt that they had "the personal stake and interest that impart the concrete adverseness" called for by the case or controversy requirement of Article III of the Constitution. 397 U.S. at 164, 90 S.Ct. at 836, 25 L.Ed.2d at 198. However, as in Data Processing, the Court found additionally that the plaintiffs were within "the zone of interests protected by the Act," and Justices Brennan and White expressed their view that that finding was wholly unnecessary. 397 U.S. at 173, 90 S.Ct. at 841, 25 L.Ed.2d at 203. They reiterated what was said in Flast, and earlier in Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962), that "the gist of the question of standing" is simply whether the party seeking relief has "alleged such a personal stake in the outcome *104 of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination...." 392 U.S. at 99, 88 S.Ct. at 1952, 20 L.Ed.2d at 961. Citing Scenic Hudson Preservation Conf. v. Federal Power Com'n., 354 F.2d 608 (2 Cir. 1965), cert. denied, Consolidated Edison Co. of New York v. Scenic Hudson Preservation Conf., 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966) and Office of Communication of United Church of Christ v. F.C.C., 123 U.S. App. D.C. 328, 359 F.2d 994 (D.C. Cir. 1966), they pointed out that although the plaintiff's injury which suffices for purposes of standing is generally economic, it "need not be." 397 U.S. at 172, 90 S.Ct. at 841, 25 L.Ed.2d at 203 n. 5.
In Scenic Hudson the Second Circuit sustained the standing of the Scenic Hudson Preservation Conference, an unincorporated association consisting of a number of nonprofit conservationist organizations, to attack an order of the Federal Power Commission authorizing the construction of a hydro-electric project on the west side of the Hudson River at Storm King Mountain in Cornwall, New York. In response to the Commission's fear that recognition of the plaintiff's standing would encourage "literally thousands" to intervene in future proceedings, the court noted that it saw "no such horrendous possibilities" and that its experience confirmed "that the expense and vexation of legal proceedings is not lightly undertaken." 354 F.2d at 617. The court noted further that "representation of common interests by an organization such as Scenic Hudson serves to limit the number of those who might otherwise apply for intervention and serves to expedite the administrative process." 354 F.2d at 617. In the United Church case the Court of Appeals for the District of Columbia held that representatives of the listening public have standing to intervene in proceedings seeking to renew a broadcasting license. The court pointed out that "since the concept of standing is a practical and functional one designed to insure that only those *105 with a genuine and legitimate interest can participate in a proceeding" there can hardly be any reason for excluding those with such "an obvious and acute concern as the listening audience." 359 F.2d at 1002.
The liberalized federal approach to standing has had considerable impact in representational actions by associations of taxpayers, conservationists, tenants, homeowners and the like. In National Association of Letter Carriers v. Blount, 305 F. Supp. 546 (D.D.C. 1969), appeal dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970), the court pointed out that the strict view there advanced by the Government on the standing issue ignored the trend of courts "increasingly to recognize the standing of associations to raise in some circumstances the rights of their members"; in sustaining the plaintiff's standing, the court stressed pragmatically that the association had "sufficient interest in this litigation to pursue the matter vigorously and is in a position to bring the issues into sharp focus," citing Flast v. Cohen, supra, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. 305 F. Supp. at 548. In Citizens Association of Georgetown v. Simonson, 131 U.S. App. D.C. 152, 403 F.2d 175 (D.C. Cir. 1968), cert. denied, 3259 M Street, Inc. v. Citizens Ass'n of Georgetown, 394 U.S. 975, 89 S.Ct. 1454, 22 L.Ed.2d 755 (1969), interested nearby homeowners objected to the renewal of a liquor license and appealed to the court through their association, a nonprofit corporation; the Court of Appeals held that "since the association is an authorized spokesman organized to promote these interests for its individual members, it too has standing to sue in order to protect their interests." 403 F.2d at 176.
The standing of nonprofit associations to litigate in varying contexts has been upheld in recent federal decisions. See Environmental Defense Fund, Incorporated v. Hardin, 138 U.S. App. D.C. 391, 428 F.2d 1093, 1096-1097 (D.C. Cir. 1970); Citizens Committee for Hudson Valley v. Volpe, 425 F.2d 97, 102-105 (2 Cir.), cert. denied, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970); Izaak Walton League *106 of America v. St. Clair, 313 F. Supp. 1312, 1316-1318 (D. Minn. 1970); Pharmaceutical Manufacturers Association v. Finch, 307 F. Supp. 858 (D. Del. 1970); Powelton Civic Home Owners Association v. Department of Housing and Urban Development, 284 F. Supp. 809, 820-832 (E.D. Pa. 1968); Road Review League, Town of Bedford v. Boyd, 270 F. Supp. 650, 660-661 (S.D.N.Y. 1967); Abbott Laboratories v. Celebrezze, 228 F. Supp. 855, 860-861 (D. Del. 1964), vacated on other grounds, 352 F.2d 286 (3 Cir. 1965), rev'd on other grounds, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); cf. National Association of Securities Dealers, Inc. v. Securities & Exchange Commission, 136 U.S. App. D.C. 241, 420 F.2d 83 (D.C. Cir. 1969), cert. granted, 397 U.S. 986, 90 S.Ct. 1114, 25 L.Ed.2d 394 (1970); Norwalk CORE v. Norwalk Redevelopment Agency, 395 F. 2d 920, 937 (2 Cir. 1968); Western Addition Community Organization v. Weaver, 294 F. Supp. 433, 441-445 (N.D. Cal. 1968); but cf. Sierra Club v. Hickel, 433 F.2d 24 (9 Cir. 1970), cert. granted, 401 U.S. 907, 91 S.Ct. 870, 27 L.Ed.2d 805 (1971), commented upon in 71 Colum. L. Rev. 172 (1971). Professor Jaffe has taken a strong position in favor of the standing of associations as such to litigate even though the harm may technically be not to them but to their constituencies. He notes that "there are quite positive virtues in the direct assumption of party responsibility by an association" and that "if the court will allow a citizen or taxpayer to sue, standing of a representative association would seem almost a fortiori." Jaffe, Judicial Control of Administrative Action, supra at 542-543.
One additional federal decision is worthy of mention before we come to a discussion of our own New Jersey precedents. In Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App. D.C. 371, 424 F.2d 859 (D.C. Cir. 1970), the court held that a bidder had standing to attack the Federal Aviation Administration's award of the contract to another whose bid was allegedly illegal. In the course of a comprehensive opinion, Judge Tamm reviewed the complexities and *107 technicalities in the earlier federal law of standing which, as he noted, have not generally plagued the state courts. 424 F. 2d at 861-862. He indicated that the time had come in the federal sphere for the resolution of doubts "in favor of hearing cases in which the public interest demands a hearing on the merits" (424 F.2d at 869-870); he stressed that, although the recent Supreme Court cases may be limited to their precise holdings, there was much to be said for the logic and policy of the "aggrieved-in-fact criterion" of standing (424 F.2d at 870); he dismissed the doomsayers who in their customary fashion have presented "the spectre of opening a Pandora's box of litigation" (424 F.2d at 872), pointing out that states which have relaxed their standing requirements have not been flooded with consequential litigation; and finally he suggested that the federal judges retain a measure of discretion on the standing issue so that while "completely frivolous lawsuits will be averted" suits in which there is "injury in fact" and a "sufficient adversary interest to constitute a case or controversy under Article III" will be entertained. 424 F.2d at 872.
Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies. U.S. Const. art. III, § 2; N.J. Const. art. VI, § 1. Nevertheless we will not render advisory opinions or function in the abstract (New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949)) nor will we entertain proceedings by plaintiffs who are "mere intermeddlers" (Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887), aff'd, 44 N.J. Eq. 298 (E. & A. 1888)), or are merely interlopers or strangers to the dispute (Bergen County v. Port of New York Authority et al., 32 N.J. 303, 307, 318 (1960)). Without ever becoming enmeshed in the federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we have given due weight to the interests *108 of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits." See Tumarkin v. Friedman, 17 N.J. Super. 20, 21 (App. Div. 1951), certif. denied, 9 N.J. 287 (1952); Handelman v. Handelman, 17 N.J. 1, 10-11 (1954).
Walker, Inc. v. Stanhope, supra, 23 N.J. 657, well illustrates the foregoing and New Jersey's broad treatment of the standing issue. There the Borough of Stanhope adopted an ordinance which restricted the use of trailers within its borders. The plaintiff was a retail seller of trailer homes with a place of business in Roxbury Township, about four miles from Stanhope. Alleging that he was harmed by the ordinance, he brought an action to have it declared illegal but his action was dismissed in the trial court for lack of standing. This Court reinstated the action in an opinion which noted that in determining a plaintiff's standing "the court is properly required to balance conflicting considerations and weigh questions of remoteness and degree." 23 N.J. at 661. Referring to the substantial nature of the interference with the plaintiff's business and the serious legal questions raised, we held that, in the interests of the public as well as the plaintiff, the ultimate merits should "be passed upon without undue delay." 23 N.J. at 666. The Borough's spectre of "a flood of litigation" resulting from liberalized rules of standing (23 N.J. at 666) was given short shrift and experiences to date have given us ample reassurance.
No one before us questions the tenants' stake and adverseness and admittedly there would have been no attack on standing if individual tenants had joined in the complaint. However they understandably chose to act instead entirely through their Association which was formed to help balance the bargaining power of the landlord and to enable them to deal from a position of strength with the acknowledged strength of their landlord. See Bazarko, "Tenant Unions: Legal Rights of Members," 18 Cleveland State L. *109 Rev. 358 (1969); Moskovitz & Honigsberg, "The Tenant Union  Landlord Relations Act: A Proposal," 58 Geo. L.J. 1013 (1970); Simon, "Tenant Interest Representation: Proposal for a National Tenants' Association," 47 Texas L. Rev. 1160 (1969). Though the tenants here are in a luxury apartment, their Association is hardly to be differentiated for present purposes from tenant associations generally, or from other associations whose standing to litigate has been upheld. It is true that the suits by those associations were generally aimed at wrongful governmental action or inaction whereas here the wrongful action or inaction is nongovernmental. But the adverseness and private interest are present in at least as abundant measure and the public interest also is served by an expeditious determination of the merits of the charges which involve matters of health and safety as well as comfort and convenience.
It must be borne in mind that the complaint of the Crescent Park Tenants Association is confined strictly to matters of common interest and does not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual tenant and the landlord. So far as the common grievances are concerned they may readily and indeed more appropriately be dealt with in a proceeding between the Association, on the one hand, and the landlord, on the other, thus incidentally avoiding the procedural burdens accompanying multiple party litigation. Surely, technisms aside, no one may question that the Association has a real stake in the outcome of the litigation nor may anyone question that there is real adverseness in the proceeding. All that being so, it is difficult to conceive of any policy consideration or any consideration of justice which would fairly preclude the Association from maintaining, on behalf of its member tenants, the present proceeding between itself as plaintiff and the landlord and its parent company as defendants.
Both our statutes and appellate decisions have given wide recognition to suits by associations. Nonprofit corporations, *110 such as the plaintiff Association, may under the terms of N.J.S.A. 15:1-4 "sue and be sued, complain and defend in any court," and under the terms of N.J.S.A. 2A:64-1 unincorporated associations, "consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights and liabilities." See Harker v. McKissock, 12 N.J. 310, 315-318 (1953); cf. X-L Liquors, Inc. v. Taylor, 17 N.J. 444, 454-458 (1955). In Taxpayers Association of Cape May v. City of Cape May, 2 N.J. Super. 27 (App. Div. 1949), an association of taxpayers, along with two of its taxpayer members, sought a judgment directing the city to permit examination of its official records; the Appellate Division summarily sustained their standing. Similarly in New Jersey Pharmaceutical Association v. Furman, supra, this Court sustained the standing of the Pharmaceutical Association, along with three of its pharmacist members, to seek a judicial declaration of the invalidity of an Executive Directive. 33 N.J. at 123-124.
In New Jersey State Bar Association v. Northern New Jersey Mortgage Associates, supra, this Court took the position that, although the individual lawyer-plaintiffs might not have standing to enjoin the defendants' unlawful practice of law, the plaintiff State Bar Association, along with County Bar Associations, had such standing. 22 N.J. at 196. In Hudson Bergen County Retail Liquor Stores Association v. Hoboken, supra, 135 N.J.L. 502, the plaintiff Association complained about the propriety of the issuance of certain liquor licenses. None of the individual members of the Association was joined as a party and an attack was made on the standing of the Association as such. The attack was rejected by the former Court of Errors and Appeals and there was a similar rejection by this Court in Greenspan v. Division of Alcoholic Beverage Control, supra, 12 N.J. 456.
The only pertinent appellate departure (cf. New Jersey Used Car Trade Association v. Magee, 1 N.J. Super. 371 (Ch. Div. 1948); but cf. Newark Twentieth Century Taxicab *111 Association v. Lerner, 11 N.J. Super. 363 (Ch. Div. 1951); New Jersey Home Builders Association v. Division on Civil Rights, 81 N.J. Super. 243 (Ch. Div. 1963), aff'd on merits, 45 N.J. 301 (1965)) from the cited line of cases favoring the standing of associations was the decision in New Jersey Bankers Association v. Van Riper, supra, 1 N.J. 193. There an unincorporated association of bankers brought a suit seeking a declaration as to the constitutionality of New Jersey's statutes dealing with the escheat of unclaimed bank deposits. On an unduly narrow construction of R.S. 2:78-1  now N.J.S.A. 2A:64-1 (see Jayne, V.C. in New Jersey Bankers Association v. Van Riper, 142 N.J. Eq. 301, 303-304 (Ch. 1948)), its standing was denied though its complaint presented only questions which were common to all of its member banks and though the issue would, as a practical matter, have been obviated by the joinder of one or more member banks. See New Jersey Pharmaceutical Association v. Furman, supra, 33 N.J. at 123-124; New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners, 48 N.J. 581, 587-588, appeal dismissed, cert. denied, 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed. 2d 8 (1967); cf. R.R. 4:36; R. 4:32; 2 Schnitzer and Wildstein, New Jersey Rules Service R.R. 4:36  Class Actions  AIV 1115, 1118-21 (1959). We fail to see how justice or its sound administration can be said to have been at all furthered by Bankers Association. We have cited the subsequent rejections of the single federal case on which it relied and in Institute of Planners, supra, Justice Francis recently noted that it had been "much criticized" in academic circles. 48 N.J. at 587. It is incompatible with our current procedural philosophies and with our justly liberal holdings in the field of standing; it has become a derelict in our law and is now expressly overruled. We are satisfied that the plaintiff Crescent Park Tenants Association had sufficient standing to maintain its complaint below and that the Chancery Division erred in *112 dismissing it without determining the merits; accordingly its judgment is:
Reversed.
For reversal  Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO  5.
For affirmance  None.