249 N.J. Super. 513 (1991)
592 A.2d 660
NEW JERSEY BUSINESS & INDUSTRY ASSOCIATION, NEW JERSEY STATE CHAMBER OF COMMERCE & INDUSTRY ASSOCIATION OF NEW JERSEY, NEW JERSEY FOOD COUNCIL, NEW JERSEY RETAIL MERCHANTS ASSOCIATION, FALSTROM COMPANY, INC., FIFTH DIMENSION, INC. & THE MILTON CAN CO., INC., PLAINTIFFS,
v.
STATE OF NEW JERSEY, ROBERT J. DEL TUFO, ATTORNEY GENERAL OF NEW JERSEY & CLIFFORD GREGORY STEWART, DIRECTOR OF THE NEW JERSEY DIVISION ON CIVIL RIGHTS, DEFENDANTS.
Superior Court of New Jersey, Law Division Mercer County.
Decided April 1, 1991.
*514 I. Leo Motiuk for plaintiffs (Shanley & Fisher, attorneys).
Jeffrey C. Burnstein for defendants (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
Richard A. Friedman, (Zazzali, Zazzali, Fagella & Nowak, attorneys) and Gerald P. Seid (Saiber, Schlesinger, Satz & Goldstein, attorneys), for amicus curiae New Jersey Education Association.
BRENNAN, J.S.C.
This matter is before the court on cross-motions for summary judgment. There are no factual issues in dispute and the action is appropriate for summary adjudication. The sole legal issue to be decided is whether the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 et seq., as amended, preempt and bar enforcement of section 8(a) of the Family Leave Act (FLA), N.J.S.A. 34:11B-1 et seq., recently enacted in New Jersey. The cited section of the FLA provides that an employer subject thereto must continue in effect an existing health benefit plan for an absent employee during an authorized period of family leave.
Plaintiffs, who are both private employers and trade associations whose members are employers subject to the FLA, filed their complaint seeking declaratory judgment that section 8(a) of the FLA is an unconstitutional State exercise of control over subject matter exclusively regulated by the federal government, thereby contravening the Supremacy Clause, U.S. Const., Art. VI, cl. 2. Plaintiffs also seek an order permanently enjoining enforcement by the State of section 8(a) of the FLA. *515 Defendants, the State and officials charged with enforcing the FLA, filed an answer disputing, as a matter of law, that section 8(a) is unconstitutional. The New Jersey Education Association was granted leave to file an amicus curiae brief with respect to the effect, if any, of a decision in this action on employee health benefit plans maintained by government entities subject to the FLA.
Defendants do not challenge the standing to sue of the trade associations. Our courts, on other occasions have recognized the standing of a trade association to maintain litigation on behalf of its membership even though the trade association, as a distinct entity, would not be harmed by claims against its constituent members. See Crescent Park Tenants Ass'n. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 275 A.2d 433 (1971). In the present case, plaintiff trade associations have a sufficient stake and adverseness to defendants to maintain this action.
The Supremacy Clause of the United States Constitution provides:
This Constitution and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [U.S. Const., Art. VI, cl. 2].
Because of this constitutional imperative, state law must not conflict or interfere with federal legislation and when it does federal law prevails and the state law deemed preempted. The determining factor as to whether a prohibited conflict or interference exists is always whether Congress intended to preempt the subject matter of the state legislation. See Malone v. White Motor Corp., 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978).
The judicial function in analyzing claims of federal preemption was stated in U.S.A. Chamber of Commerce v. State, 89 N.J. 131, 445 A.2d 353 (1982) as follows:
Preemption analysis begins with identifying the subject matter of the state law and determining whether there is a federal law operative in that field. Hines v. *516 Davidowitz, 312 U.S. 52, 64-68, 61 S.Ct. 399, 402-404, 85 L.Ed. 581, 587 (1941). The focus then shifts to the federal regulation. The Supreme Court has developed some general guidelines that are useful in uncovering Congressional intent. Does the federal statute expressly or by necessary implication indicate exclusivity? See Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). Is the federal scheme so pervasive that it precludes coexistence of state regulation? See San Diego Bldg. Trades v. Garmon, 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 784 (1959). Does the state program stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"? See Hines v. Davidowitz, supra, 312 U.S. at 67-68, 61 S.Ct. at 404, 85 L.Ed. at 587. An affirmative answer to any one of these questions would establish preemption and the state policy must yield insofar as it frustrates or blocks federal policy. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256-257 (1963). [89 N.J. at 142, 445 A.2d 353].
Courts faced with potentially conflicting state and federal statutes must attempt to harmonize them whenever possible. Preemption of state law by federal statute is not favored in the absence of persuasive reasons  either the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained. It is not a question of whether the purposes of the two laws are parallel or divergent, but rather a court must determine whether both regulations can be enforced without impairing federal superintendence of the field. Exxon Corp. v. Hunt, 97 N.J. 526, 533, 481 A.2d 271 (1984); Florida Lime & Avocado Growers, supra.
Accordingly, in determining the proper construction of allegedly conflicting statutes, courts must perform "essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." Chicago & N.W. Trans. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 265 (1981) (quoting Perez v. Campbell, 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233, 239 (1971)); Exxon Corp. v. Hunt, supra.
The Family Leave Act (FLA), N.J.S.A. 34:11B-1 et seq., was enacted on January 4, 1990 and became effective May 4, 1990. The legislative purpose for passage of FLA is set forth in the legislative findings:

*517 The Legislature finds and declares that the number of families in the State in which both parents or a single parent is employed outside of the home has increased dramatically and continues to increase and that due to lack of employment policies to accommodate working parents, many individuals are forced to choose between job security and parenting or providing care for ill family members. The Legislature further finds that it is necessary to promote the economic security of families by guaranteeing jobs to wage earners who choose to take a period of leave upon the birth or placement for adoption of a child or serious health condition of a family member. The Legislature, therefore, declares that it is the policy of the State to protect and promote the stability and economic security of family units. The Legislature further declares that employees should be entitled to take a period of leave upon the birth or placement for adoption of a child or serious health condition of a family member without risk of termination of employment or retaliation by employers and without loss of certain benefits. [N.J.S.A. 34:11B-2].
To implement these legislative goals, the FLA requires covered employers, both private and public, to provide leave to eligible employees of up to 12 weeks for the birth or adoption of a child, or serious illness of a family member with minor exceptions. Employees who are eligible for benefits are only those who have been employed for at least one year and who have worked at least 1,000 "base hours" during the previous 12 months. N.J.S.A. 34:11B-3(e). The leave may be paid or unpaid in the discretion of the employer. N.J.S.A. 34:11B-4(d). Upon the expiration of the leave, employees are entitled to return to their prior job or an equivalent position. N.J.S.A. 34:11B-7. Further, the FLA gives employees the option of working on a "reduced leave" schedule for a period of up to 24 weeks. N.J.S.A. 34:11B-5.
The portion of the FLA being challenged by plaintiffs in this action is N.J.S.A. 34:11B-8(a), which provides:
During a leave taken under section 4 of this act, the employer shall maintain coverage under any group health insurance policy, group subscriber contract or health care plan at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously from the date the employee commenced the leave to the date the employee returns to work pursuant to section 7 of this act or the date on which the employee's coverage would have expired had the employee not been on leave, whichever is sooner.
Section 8(a) of the FLA does not require an employer to provide a particular level of benefits, or any health benefits at *518 all, but does require an employer to continue to provide, during a family leave, whatever health coverage that would have been provided if the employee had continued working. In all other respects, employment benefits, other than health insurance, need only be maintained in accordance with the employer's policy respecting employment benefits for employees on temporary leave from employment. N.J.S.A. 34:11B-8(b). For violation of FLA's provisions, an employer is subject to substantial fines and civil liability, including punitive damages and attorney fees. N.J.S.A. 34:11B-10-12.
The crux of the dispute between plaintiffs and defendants deals with the extent to which Congress intended federal law embodied in ERISA to exclude state regulation of employee health benefit plans. Plaintiffs maintain that ERISA forecloses any and all state action dealing with employee health benefit plans. Defendants contend that FLA provisions only tenuously, remotely or peripherally overlap ERISA's regulations and therefore do not constitute an unconstitutional infringement on federal primacy in this area.
ERISA is a comprehensive federal statute designed to promote the interests of employees and their beneficiaries in employee benefit plans, which include both pension and employee welfare benefit plans. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and cases cited therein. An "employee welfare benefit plan" is defined to include: "Medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or employment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." 88 Stat. 829; 29 U.S.C.A. § 1002(1).
ERISA imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure and fiduciary responsibility, for both pension and welfare plans. The act does not mandate that employers provide any particular *519 welfare benefits, and does not itself proscribe discrimination in the provision of employee welfare benefits among employees. Shaw v. Delta Air Lines, Inc., supra.
Section 514(a) of ERISA, 29 U.S.C.A. § 1144(a), preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. State laws regulating insurance, banking, or securities are exempt from the preemption provisions, as are generally applicable state criminal laws. Section 514(d), 29 U.S.C.A. § 1144(d) moreover, provides that "(n)othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law." And § 4(b)(3) of ERISA, 29 U.S.C.A. § 1003(b)(3) exempts from ERISA coverage employee benefits plans that are "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." Shaw v. Delta Air Lines, Inc., supra.
Defendants concede for purposes of this motion that the FLA does not come within any of the expressed exceptions to preemption set forth in ERISA. Their position is that Congress in enacting ERISA did not intend its preemptive provision to extend to such an attenuated extent as to frustrate state action, only incidentally affecting operation of employee health benefit plans.
The United States Supreme Court and lower federal courts have developed a large body of case law defining the scope of the ERISA preemption provisions. The focus of these cases has been whether the challenged state legislation "relates to" employee benefit plans. As summarized in Ingersoll-Rand Co. v. McClendon, 498 U.S. ___, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990):
A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. [citation omitted] Under this "broad commonsense meaning," a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. [498 U.S. at ___, 111 S.Ct. at 483, 112 L.Ed.2d at 484; citation omitted]
*520 It is clear that under this broad interpretation of the phrase "relates to," the FLA's provision for continuation of employee health benefits during a period of family leave which benefits could otherwise be terminated or suspended by an employer under ERISA comes within the ambit of ERISA's preemption provision. Under FLA, a multi-state employer might well be compelled to adopt a special program for providing health benefits during work leaves for employees in New Jersey that differs from that available to its employees in other states. Such a situation has been recognized by the Supreme Court as a major consideration for the inclusion of such broad language of preemption in ERISA. In Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), Justice Brennan observed:
It is thus clear that ERISA's preemption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patch-work scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Preemption ensures that the administrative practice of a benefit plan will be governed by only a single set of regulations. [482 U.S. at 11, 107 S.Ct. at 2217]
Similar statements regarding the rationale for ERISA preemption are found in Alessi v. Raybestos Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) and in Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).
Accordingly, this court holds and declares that section 8(a) of the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 et seq., to the extent that it "relates to" any employee welfare benefit plan regulated under the Federal Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 et seq., as amended, is unconstitutional, null and void. Further, the court permanently enjoins defendants, the State of New Jersey, Robert J. Del Tufo, Attorney General of New Jersey, and Clifford Gregory Stewart, Director of the Division of Civil Rights, from enforcing the provisions of section 8(a) of the FLA against any employer *521 governed by that act who maintains an employee welfare benefit plan regulated under ERISA. This decision shall not be construed as affecting any other portion of the FLA other than section 8(a), nor shall it be construed as affecting any employee health benefit arrangement not subject to regulation under ERISA, including any such plans maintained by a government employer not within the regulatory scope of ERISA. Orders in conformity with this opinion shall be entered forthwith.