**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1353-19T2

HORIZON BLUE CROSS
BLUE SHIELD OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SPEECH & LANGUAGE CENTER,
LLC, and CHRYSSOULA
MARINOS-ARSENIS,

    Defendants-Appellants.

_____

Argued November 17, 2020 – Decided December 16, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0281-15.

Michael Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Patricia A. Lee argued the cause for respondent (Connell Foley LLP, attorneys; Patricia A. Lee, of counsel and on the brief; Jaimee A. Glinn, on the brief).

PER CURIAM

Defendants appeal an order that compelled them to execute a settlement agreement. Because we agree with the trial judge that defendants freely and voluntarily entered into the agreement and then failed to execute it, we affirm.

The record reveals that defendant Chryssoula Marinos-Arsenis is a licensed speech-language pathologist and owner of defendant Speech & Language Center, LLC, which provides speech-related therapy to patients. Plaintiff Horizon Blue Cross Blue Shield filed suit against defendants in 2014, alleging a "scheme to submit false and fraudulent insurance claims," and seeking a significant amount of damages on claims based on the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -34, as well as fraud, negligent misrepresentation, breach of contract, and unjust enrichment.

After years of litigation, the parties earnestly engaged in settlement negotiations the month prior to their September 2019 trial date. In a proceeding in open court on August 30, 2019, the parties advised the trial judge that they had settled the case, that the material terms of their agreement were contained in a term sheet referred to throughout the proceeding,[1] and that the parties would

_____

[1] That document was not marked as an exhibit, an oversight defendants have attempted to take advantage of. See n. 3, below.

thereafter draft and sign a formal agreement based on the term sheet. The judge

placed defendant Arsenis under oath and questioned her about her willingness

to settle:

> THE COURT: Okay. Ma'am, you've heard . . . both counsel put on the record that you've reached an amicable resolution of this matter, is that true?
>
> MS. ARSENIS: Yes.
>
> THE COURT: And you understand the terms of that settlement are memorialized in the agreement[2] that was referenced by counsel, correct?
>
> MS. ARSENIS: Yes.
>
> THE COURT: You've had a chance to see that?
>
> MS. ARSENIS: Yes.
>
> THE COURT: Okay. You've had a chance to go over it [the term sheet] with your counsel, correct?
>
> THE WITNESS: Yes.
>
> THE COURT: And that includes [defense counsel] who's seated with you today?
>
> MS. ARSENIS: Yes.
>
> THE COURT: And your son, who is not an attorney of record, but he is an attorney, and he's seated next to you at counsel table, correct?

---

2 Referring to the term sheet.

A-1353-19T2

MS. ARSENIS: Yes.

THE COURT: Okay. Do you understand the terms?

MS. ARSENIS: Yes.

THE COURT: Have you voluntarily agreed to them?

MS. ARSENIS: Yes.

THE COURT: You understand that it resolves this matter in full, correct?

MS. ARSENIS: Yes.

THE COURT: And that, of course, you had the opportunity to have a trial in this matter heard by a jury, you do you understand that?

MS. ARSENIS: Yes.

THE COURT: You could have done better than what you've done in that agreement, or you could have done worse, do you understand that?

MS. ARSENIS: Yes.

THE COURT: With a jury it's always a possibility, correct?

MS. ARSENIS: Yes.

THE COURT: By settling the matter, you understand you're waiving your right to a jury trial and accepting those settlement terms as an amicable resolution of the matter, do you understand that?

MS. ARSENIS: Yes.

4

Despite confirming under oath that the parties had reached a settlement that would be memorialized in a formal agreement consisting of all the provisions contained in the term sheet, defendants later refused to execute the more formal settlement agreement, causing plaintiff to move in the trial court for relief. As revealed by the motion papers, defendants' recalcitrance was based on the inclusion of a clause that would ostensibly govern the parties' agreement if defendant Arsenis filed a bankruptcy petition. The formal settlement agreement that defendants refused to sign declared that "[i]n the event" defendant Arsenis filed a bankruptcy petition prior to the full payment of her obligation to plaintiff, she agreed "not to contest the non-dischargeability of any remaining settlement payment obligation." This identical phrase appears in the term sheet. The bankruptcy clause in the unsigned settlement agreement also expressed that defendant Arsenis

> agrees and intends that the judgment debt will be a non-dischargeable debt, pursuant to 11 U.S.C. § 523(a)(2) in the event of a bankruptcy, or in any similar proceeding.

The term sheet contains an identical provision.

The trial judge granted plaintiff's motion for reasons discussed in a written opinion, and defendants appeal. Defendants contend that the judge erred

5

because: (1) defendant Arsenis "agreed to settle plaintiff's claims to avoid further legal expense and stop the bleeding – not to acknowledge 'fraud' as the Final Settlement Agreement provides"; (2) "[t]he record does not show that the actual party, [defendant] Arsenis, agreed to a reference [in the settlement agreement] to fraud"; and (3) the judge "should have struck the offending non-dischargeability terms as unenforceable and void." We reject these arguments and affirm.

In explaining our disposition, we should start with an understanding of what plaintiff was after when moving in the trial court. Plaintiff entitled its motion as one seeking to "enforce" a settlement. While that label is not inaccurate, it is capable of being misunderstood. What plaintiff sought, despite the motion's moniker, was simply to have defendants do what they promised to do: sign an agreement that was faithful to the term sheet. The motion did not seek, and this appeal does not require us to decide, whether the settlement agreement should or will be "enforced" if the bankruptcy clause should be triggered in the future.

In a solemn proceeding at which both parties were represented by counsel, defendant Arsenis took the oath and swore to a superior court judge that she freely and voluntarily entered into a settlement that obligated her execution of a

6

written agreement that included the provisions in the term sheet, including the bankruptcy provision. There's no dispute about that. And there's no dispute that the drafted settlement agreement adhered to the term sheet. As for those provisions that provoked defendants' failure to sign, the settlement agreement contains – word for word – what was contained in the term sheet. So, there was no legitimate impediment to the entry of an order compelling execution of the settlement agreement; defendants' first and second arguments are, therefore, without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).[3]

We do not reach defendants' third argument because our courts "do not render advisory opinions or function in the abstract." Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107 (1971). Defendant Arsenis's agreement about the debt's non-dischargeability has no significance until she files a bankruptcy petition. If, at that time – should it ever occur – the parties

---

[3] We make note of two other aspects of these arguments falling within the first two points. First, defendants contend that plaintiff did not demonstrate that the term sheet included in the appendix is the same term sheet referred to during the August 30, 2019 proceeding. We find this contention frivolous, particularly when defendants never filed an opposing certification in the trial court claiming there was some other term sheet. Second, defendants argue that, in resolving the controversy, the judge should have conducted an evidentiary hearing. There was, however, no genuine dispute about what defendants agreed to sign, so this argument is also without merit.

A-1353-19T2

dispute whether the debt is dischargeable, a bankruptcy court will have to consider whether federal policies and legal principles preclude the enforcement of what defendant Arsenis "agree[d] and intend[ed]" in executing the settlement agreement about dischargeability. This appeal does not require that we opine on this interesting but unripe issue.[4]

To summarize, the only real issue in controversy is whether plaintiff was entitled to an order compelling defendants to sign what they had agreed to sign. We hold that plaintiff is entitled to that relief without deciding whether the settlement agreement's non-dischargeability provisions may ultimately be enforced by a bankruptcy court should defendant Arsenis ever file a bankruptcy petition.

---

[4] Mindful of the limitations imposed by Rule 1:36-3, we note only for historical purposes, and not for precedential purposes, that the Court of Appeals for the Third Circuit considered the issue nearly thirty years ago but neither reached a consensus nor published their opinions. Judge Cowen wrote an opinion, in which Chief Judge Sloviter joined, that affirmed a bankruptcy court determination that a party could not consent, in an earlier action in another court, to the non-dischargeability of a debt or judgment, while Judge Weis disagreed for reasons expressed in his dissent. Cheripka v. Republic Ins. Co., 1991 U.S. App. LEXIS 30343 (3d Cir. 1991). Thereafter, a majority of the Third Circuit's active judges voted to rehear the matter in banc and, in doing so, vacated the three-judge panel's opinions and its judgment. Cheripka v. Republic Ins. Co., 1992 U.S. App. LEXIS 898 (3d Cir. 1992). Later, because the court's twelve judges were "equally divided" on the question, the bankruptcy court order was affirmed. Cheripka v. Republic Life Ins. Co., 1992 U.S. App. LEXIS 38449 (3d Cir. 1992). The court seems not to have taken up the issue since.

The order under review is affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1353-19T2