ALVAREZ, P.J.A.D.
*334 The New Jersey Office of the Public Defender (OPD) appeals from an April 29, 2016 declaratory judgment finding Courtroom No. 2 in the Warren County Courthouse to be constitutionally *335 adequate for the conduct of criminal jury trials. We now reverse and remand. We also suggest the assignment judge of Middlesex County, to whom the matter had been transferred for decision, consider appointing a special master, pursuant to Rule 4:41-1, to make findings and recommendations before rendering a decision.
This case has an unusual procedural history. It commenced in 2011, when a Warren County public defender objected to conducting a criminal trial in newly renovated Courtroom No. 2.[1] His objection was overruled, and the matter proceeded to conclusion. On February 6, 2012, a second case was scheduled to be heard in the courtroom, and this time, the trial judge granted the motion to move the trial elsewhere. That judge described in detail problems with the design, including obstructions to a defendant's view of the witness stand and the jury box. The judge determined that the courtroom was constitutionally inadequate.
On February 9, 2012, the Warren County Prosecutor's Office (prosecutor's office) filed a motion before the Warren County assignment judge, seeking to vacate the trial judge's order barring the use of Courtroom No. 2. Meanwhile, a third application was made to stay a criminal trial in that courtroom. The Warren County *898 assignment judge consolidated the matters and transferred them for hearing before the assignment judge of Middlesex County. The prosecutor's office then filed a verified complaint and order to show cause in that vicinage. The OPD removed the matter to federal court; it was remanded back to state court on June 20, 2012. The case, captioned "In re Vicinage 13," thereafter languished.
In the interim, Warren County filed separate litigation concerning the courtroom, which was settled with the Administrative Office of the Courts (AOC) on September 23, 2015. After the parties agreed to certain renovations, the action was dismissed. In March 2016, Warren County moved for declaratory judgment *336 pursuant to the Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62. The matter bore the docket number of the prior-by then inactive-proceeding. It was the outcome of the DJA application that resulted in the order now appealed.
Turning to that decision, the assignment judge to whom the matter had been transferred ruled that the OPD lacked standing to participate. Acknowledging New Jersey's expansive view of the doctrine, the judge nonetheless reached this conclusion because the OPD did not represent a specific individual whose trial was currently scheduled in the courtroom.
Additionally, the court reasoned that even if the OPD had standing, the modifications agreed to in 2015 in the Vicinage 13 action between Warren County and the AOC corrected the six courtroom defects identified by the trial judge in 2012. The assignment judge based his determination in part on the representations of an architect the judge had designated for that purpose.
A certification from an OPD attorney, however, stated that not only were the constitutional issues with the courtroom unresolved, the settlement agreement called for modifications that were not completed. The attorney alleged that the alterations to the courtroom made it more cosmetically functional but failed to: correct line of sight issues, provide the space necessary for a criminal trial, and increase the available seats in the courtroom-meaning that, overall, the space was inadequate for jury selection as well as for public attendance.
The OPD raises the following points for our consideration:
POINT I
THE PUBLIC DEFENDER HAS STANDING [ ]
POINT II
THE TRIAL COURT'S GRANT OF A DECLARATORY JUDGMENT WAS [NOT] APPROPRIATE [ ]
POINT III
RES JUDICATA BARRED THE ISSUANCE OF A DECLARATORY JUDGMENT [ ]
POINT IV
*337 TRIAL COURT INAPPROPRIATELY TOOK JUDICIAL NOTICE OF FACTS IN DISPUTE WITHOUT FOLLOWING RULE 201'S REQUIREMENTS [ ]
POINT V
THE TRIAL COURT ERRED IN GRANTING RELIEF AS A MATTER OF LAW, ESPECIALLY ON A DISPUTED RECORD [ ]
POINT VI
COURTROOM TWO, AS DESIGNED, IS NOT CONSISTENT WITH FEDERAL ACCESS TO JUSTICE LAWS AND APPEARS TO VIOLATE THE AMERICAN[S] WITH DISABILITIES ACT [ ]
We discuss only the issues of standing and whether the matter is justiciable under *899 the DJA. The remaining points on appeal either do not warrant discussion in a written opinion, Rule 2:11-3(e)(1)(E), or are made moot by our decision to remand.
I.
We conclude that the OPD has standing and should have been afforded the opportunity to participate in the declaratory judgment action. "The issue of standing is a matter of law as to which [this Court] exercise[s] de novo review." People For Open Gov't v. Roberts, 397 N.J. Super. 502, 508, 938 A.2d 158 (App. Div. 2008) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ); see also Rowe v. Hoffmann-La Roche Inc., 383 N.J. Super. 442, 452, 892 A.2d 694 (App. Div. 2006), rev'd on other grounds, 189 N.J. 615, 917 A.2d 767 (2007). New Jersey has traditionally taken a much more liberal approach on the issue than have the federal courts. In re Camden Cty., 170 N.J. 439, 451, 790 A.2d 158 (2002) ; Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 101, 275 A.2d 433 (1971).
Our courts are not bound by the "case or controversy" requirement that governs federal courts under U.S. Const. Art. III, § 2. Salorio v. Glaser, 82 N.J. 482, 490, 414 A.2d 943 (1980). In Salorio, our Supreme Court said it was "free to fashion its own law of standing consistent with notions of substantial justice and sound judicial administration." Id. at 491, 414 A.2d 943. Thus, the Court has "consistently held that in cases of great public interest, any 'slight additional private interest' will be sufficient to afford standing."
*338 N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 274, 181 A.3d 257, 2018 WL 823001, 12 (App. Div. 2018) (citations omitted).
However, we "will not render advisory opinions or function in the abstract" nor "entertain proceedings by plaintiffs who are 'mere intermeddlers' or are merely interlopers or strangers to the dispute." Crescent Park Tenants Ass'n, 58 N.J. at 107, 275 A.2d 433 (citations omitted). "In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of 'just and expeditious determinations on the ultimate merits.' " Roberts, 397 N.J. Super. at 510, 938 A.2d 158 (quoting Crescent Park Tenants Ass'n, 58 N.J. at 107-08, 275 A.2d 433 ).
The assignment judge reasoned that the OPD lacked standing because the office was not actively representing a defendant whose trial was about to take place in Courtroom No. 2. Setting that undisputed circumstance aside, however, it was the OPD that initiated the proceedings years before. The subject matter of the litigation implicates the interests of the indigent criminal defendants the OPD is mandated to represent in that county, and such cases will be assigned to that courtroom. Thus, issues "of substantial justice and sound judicial administration" cannot be conclusively addressed without the OPD's participation. See Salorio, 82 N.J. at 491, 414 A.2d 943.
The federal court remanded the case to the state court in part because the OPD lacked standing to remove a matter in which it was not a named defendant. The analysis, however, is different and distinct-standing for removal purposes-from the question of whether the OPD has standing at all.
The State agrees with the OPD on this issue. So does Warren County, with the caveat that the OPD's interest extends only to per se violations of the Sixth *900 Amendment, not to the other concerns the OPD raised before the assignment judge and by way *339 of appeal. Even if that argument were correct, the OPD has a right, if not an obligation, to participate in the proceedings.
In a different context we have said a litigant must "raise the constitutional rights of a third party when the third party's rights are likely to be diluted or adversely affected unless they are raised by a plaintiff holding a confidential relationship with the third party." Stubaus v. Whitman, 339 N.J. Super. 38, 51, 770 A.2d 1222 (App. Div. 2001) (citing In re Estate of Neuwirth, 155 N.J. Super. 410, 419, 382 A.2d 972 (Cty. Ct. 1978) ). It is the OPD's voice that speaks to the due process rights of indigent criminal defendants. To exclude it from the process would be contrary to both substantial justice for the agency's clients as well as principles of sound judicial administration. See Salorio, 82 N.J. at 491, 414 A.2d 943.
II.
The DJA "authorizes courts to declare rights, status and other legal relations so as to afford litigants relief from uncertainty and insecurity." Chamber of Commerce v. State, 89 N.J. 131, 140, 445 A.2d 353 (1982). A decision regarding the constitutional suitability of the courtroom would "settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51.
As the Court recently reiterated, the DJA provides interested parties with a means of "preserv[ing] the status quo without having to undergo costly and burdensome proceedings." Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 275, 166 A.3d 1125 (2017). Adjudication under the DJA requires an actual controversy, avoiding "abstract disagreements." Ibid. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ). "[T]he facts [must] present 'concrete contested issues conclusively affecting the parties' adverse interests.' " Ibid. (citing N.J. Tpk. Auth. v. Parsons, 3 N.J. 235, 241, 69 A.2d 875 (1949) ).
*340 Warren County's application for declaratory judgment sought resolution of a pending, consequential dispute that had not been finalized for years. Warren County's decision to seek judicial review of the return on its investment in courtroom modifications, and its compliance with the settlement it had earlier reached with the AOC, is proper.
The OPD's attempted removal of the case to the federal system demonstrates it too viewed the controversy as ongoing and worthy of adjudication, despite its contention on appeal that the subject matter should not have been addressed under the DJA. The declaratory judgment granted in this case unquestionably resolved an actual controversy. See ibid.
The OPD also contends that the federal district court's remand to state court demonstrates that no declaratory judgment should have issued, and that law of the case principles should bar further proceedings. Feldman v. Lederle Labs., 125 N.J. 117, 132, 592 A.2d 1176 (1991) ("The law-of-the-case doctrine is a guide for judicial economy based on the sound policy that 'when an issue is once litigated and decided during the course of a case, that decision should be the end of the matter.' " (citation omitted) ). As we have said, we disagree with the OPD's interpretation of the federal judge's decision. He only determined that the OPD was not a "defendant" within the context of 28 U.S.C. § 1441(a), and that, accordingly, it could not remove the matter to district court. The judge did not mean that he *901 found the matter to be non-adversarial. He only intended to address the propriety of removal within the jurisdictional requirements of federal law. See 28 U.S.C. § 1441(a).
Additionally, it is not necessary for the parties to have an explicitly adverse interest to each other. So long as the parties disagree concerning the effect of significant statutes and regulations governing their rights and duties, while maintaining different priorities, that suffices to make the matter justiciable under the DJA. N.J. Ass'n for Retarded Citizens v. N.J. Dep't of Human Servs., 89 N.J. 234, 243, 445 A.2d 704 (1982). These parties have *341 overlapping responsibilities, but none share precisely the same goals. The disagreement creates a significant legal controversy between branches of government that makes this proceeding adversarial and subject to the DJA.
III.
Res judicata prevents a party from relitigating for a second time a claim already determined between the same parties. Collateral estoppel (or "issue preclusion") is "that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977) (citations omitted).
In assessing whether the doctrine applies, courts consider five factors:
(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[ N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 115, 23 A.3d 352 (2011) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006) ).]
However, "even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." Ibid. (quoting Olivieri, 186 N.J. at 521-22, 897 A.2d 1003 ).
The OPD's assertion that res judicata bars the 2016 declaratory judgment warrants little discussion in a written opinion. See R. 2:11-3(e)(1)(E). The initial 2012 decision was about a courtroom that has since been renovated. The decision did not include these parties. Warren County became an active participant in the dispute only afterwards. Accordingly, none of the five prongs of the test have been met.
*342 By way of sidelight, we find no merit in Warren County's position that only the assignment judge had the authority to render a decision in the first instance regarding the suitability of the courtroom. Rule 1:33-4(b) does not preclude affected parties from raising claims regarding the constitutional right to a fair trial.[2] The rule did not bar the trial judge in 2012 from granting the defense attorney's application to remove his client's trial to another *902 courtroom. All judges are required to protect the constitutional rights of the litigants who appear before them.
IV.
Finally, the OPD contends that the assignment judge who rendered judgment erroneously took judicial notice of disputed facts. State v. Silva, 394 N.J. Super. 270, 275, 926 A.2d 382 (App. Div. 2007) ("[T]he cases support the proposition that facts that can be reasonably questioned or disputed may not be judicially noticed."). We do not reach that argument because the record on appeal is insufficient for appellate review and requires a remand. For that reason, we suggest that the Middlesex County assignment judge refer the matter to a master pursuant to Rule 4:41-1, at the parties' shared expense. "[E]xtraordinary circumstances" exist that justify such an appointment, as called for by the rule. R. 4:41-1. This controversy involves several governmental entities, funded from separate sources, whose responsibilities and interests overlap but are not strictly aligned. The issues implicate the due process rights of litigants whose matters are tried in the courtroom, as well as the budgetary concerns of Warren County. Any final decision reached regarding the courtroom will have long-term consequences. Should the assignment judge agree, the master *343 may, as the rule allows, schedule proceedings, conduct hearings, and even appoint experts to document the extent to which the renovations serve their intended purpose. R. 4:41-3. The question of whether Courtroom No. 2 passes constitutional muster demands a more comprehensive examination. We do not retain jurisdiction.
Reversed and remanded.

The courtroom had undergone renovations beginning in 2008. After the renovations, four criminal trials were conducted in the courtroom.

Rule 1:33-4(b) states:
The Assignment Judge shall be the authorized representative of the Chief Justice for the efficient and economic management of all courts within the vicinage. The responsibilities of the Assignment Judge also shall include all such matters affecting county and municipal governments, including but not limited to budgets, personnel, and facilities.