<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2592-23

TAMI CORRELLO,

      Plaintiff-Respondent,

v.

DOUGLAS CORRELLO,

      Defendant-Appellant.

_____

Submitted March 31, 2025 – Decided August 6, 2025

Before Judges Gummer and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0393-03.

August J. Landi, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

    In this matrimonial matter, the parties are before this court again post-judgment regarding the obligation of defendant Douglas Corrello to pay plaintiff

Tami Corrello alimony.  In this appeal, defendant challenges a March 15, 2024 order, in which a Family Part judge denied defendant's motion to terminate or modify his alimony obligation due to plaintiff's and her counsel's alleged past misrepresentations and withholding information and for sanctions.  In the order, the judge also granted in part and denied in part plaintiff's cross-motion to enforce prior orders and to sanction defendant for his willful non-compliance with those orders.  We affirm.

I.

Because the parties are well familiar with the extensive factual and procedural background of this matter, we need not and do not detail that background in this opinion and instead focus on information directly related to this appeal.  See Corrello v. Corrello, No. A-5570-16 (App. Div. Nov. 20, 2018) (Corrello II); Corrello v. Corrello, No. A-0292-12 (App. Div. Dec. 29, 2016) (Corrello I).[1]

The parties were married in 1992, had four children, and divorced in 2004 by way of a dual final judgment of divorce (FJOD).  The FJOD required defendant pay plaintiff $352 weekly in alimony until the youngest twin children

---

[1]  See R. 1:36-3 (permitting courts to cite unpublished opinions "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law").

reached the age of fourteen in 2012, at which time defendant's weekly alimony obligation would shrink to $100.

However, in our 2016 opinion, we affirmed a May 25, 2012 order granting plaintiff's motion to delay the effective date of the step-down provision. Corrello I, slip op. at 5, 12. We rejected defendant's argument that "fraud should have precluded plaintiff from receiving relief" in her motion regarding the step-down provision of the FJOD because "no competent evidence . . . support[ed] defendant's claim that plaintiff [had] provided 'fraudulent' information in her Case Information Statement [CIS]." Id. at 9, 14. We also affirmed a provision in an April 10, 2014 order[2] denying defendant's motion to terminate his alimony obligation and reversed a provision of that order reducing defendant's weekly alimony obligation to $100 based on a monthly income of $1,070 the court had imputed to plaintiff. Id. at 26-27. We remanded the case for a new determination of defendant's alimony obligation. Id. at 22.

On remand, in a January 10, 2017 letter, a Family Part judge directed the parties to submit current CISs and "Alimony Demands." Plaintiff submitted a CIS dated February 17, 2017. In a May 2, 2017 "supplemental certification," defendant asserted "[p]laintiff has not been forthcoming disclosing her current

_____

[2] The order was dated April 9, 2014, but was entered on April 10, 2014.

3

financial position."  He specifically faulted plaintiff for not explaining a $208,173 loan from her mother she had listed on her CIS and for not disclosing "significant assets that [p]laintiff ha[d] recently inherited," referencing plaintiff's mother, who had died on April 21, 2016, and her mother's sale of two houses in the spring of 2014.  In a "certification of services," plaintiff's counsel responded to defendant's assertions about plaintiff's purported inheritance, stating "her mother's estate, which is hardly what defendant portrays it to be, was left in a special needs trust."

In a decision he placed on the record on July 12, 2017, the judge recalculated defendant's alimony obligation and ordered defendant to pay plaintiff $276 weekly in alimony.  The judge acknowledged the $208,173 loan plaintiff had listed on her CIS but gave it no consideration.  In our 2018 opinion, we affirmed the July 14, 2017 and August 8, 2017 orders memorializing the judge's decision.  Corrello II, slip op. at 2, 5.  In so holding, we rejected the following argument defendant had made on appeal:

> III.  THE TRIAL COURT ERRED WHEN IT DID NOT REQUIRE PLAINTIFF TO DISCLOSE THE TERMS AND AMOUNT OF HER INHERITANCE.  THE TRIAL COURT WAS NOT ABLE TO PERFORM A PROPER ALIMONY ANALYSIS DUE TO PLAINTIFF'S WITHHOLDING OF SIGNIFICANT

4

INHERITANCE, ASSETS AND TRUST FUNDS AVAILABLE TO HER.

[Id. at 2, 4.]

On April 1, 2022, plaintiff moved to terminate or modify his alimony obligation and to sanction plaintiff "due to [p]laintiff's misrepresentations and withholding of information regarding cash inheritances and trust income." He also sought to sanction plaintiff's counsel "for [counsel's alleged] violation of RPC 3.3 and RPC 8.4(c) for his sworn misrepresentation and withholding of information regarding [p]laintiff's cash inheritance and trust income by vacat[ing] the attorney fee award in the [c]ourt's [o]rder dated 8/8/17." He also sought an order requiring the county probation division "to adjust its records" and "reissue any orders of income withholding if necessary."

In support of that motion, defendant submitted a certification in which he asserted the Family Part judge had based the 2017 "alimony increase decision and counsel fee award upon the misrepresentation and withholding of information." He faulted plaintiff and her attorney for failing to disclose "the cash inheritance and the trust account information." He asserted that "[d]uring a [South Carolina] [c]ourt proceeding for matters unrelated to [a]limony" – defendant had filed an action in South Carolina, where plaintiff resided, seeking a refund of child support – plaintiff had disclosed she was the sole heir of her

5

mother's estate and had received $207,443.02 from her mother's estate. He relied on the South Carolina court's reference to plaintiff not disclosing in 2017 a bank account and "that she had access to a trust that paid for her medical expenses." He asserted plaintiff had not disclosed in her 2017 CIS funds she had received from "an inherited annuity account" in 2016. He also asserted plaintiff's tax returns showed she had received money from the trust in 2017, 2018, and 2019. He faulted plaintiff for not providing "information as to the value or accounting of the trust."

On April 18, 2022, plaintiff cross-moved to enforce the April 10, 2014, December 7, 2016, and August 8, 2017 orders and to sanction defendant for his alleged willful noncompliance with those orders. In support of that cross-motion, plaintiff submitted a certification in which she referenced her 2017 CIS, stating:

> My attorney . . . correctly advised the [c]ourt that I . . . had not received any inheritance and everything my mother had was contained within the 2013 RJ Groves Trust . . . . Neither me, nor anybody else for that matter, are named as any type of beneficiaries to her Estate assets anywhere in her Will. That meant that ALL her assets from the Estate Account were to be placed into the 2013 RJ Groves Trust whereby the rules of the Trust would then govern . . . . Again, I inherited no assets of any type[;] therefore my 2017 CIS was submitted accurately.

6

Regarding her mother's estate account, plaintiff certified:

> I was named in my mother's Will as the Executor of her Will, and upon paying all her outstanding debts and expenses I was required to turn over the remaining assets to the 2013 RJ Groves Trust as discussed above . . . . The Trustees of the Trust were fully aware of my and the children's desperate, unforeseen and unfathomable financial situation caused by the NJ [c]ourt's erroneous ruling as discussed above. We were sinking into financial despair and sinking fast. I made the decision to borrow from the Estate Account confident that I would be able to repay the funds just as soon as the appeal was finalized and [d]efendant was ordered to refund me all the alimony and child support that never should have been removed over [three] years ago. I also believed I would be awarded a substantial counsel fee award. The Trustees were aware of my actions.

> . . . .

> The Appellate [Division] rendered a [d]ecision in November 2018 where all of [d]efendant's arguments were denied . . . . Despite the Appellate [Division] upholding the [t]rial [c]ourt's [o]rder, [d]efendant still refused to comply with the [c]ourt's orders and moved on to filing applications in South Carolina as discussed below. Since [d]efendant refused to provide ANY of the much needed and anticipated relief I was not able to repay the Estate account for the money I had borrowed at that time. In fact, I was forced to continue to borrow from this account for the four unemancipated kids and my survival.

> In summary, the Estate Account was opened, depleted and closed in a matter of two years in April 2018. . . . I did NOT INHERIT THIS MONEY. It is

7

NOT an asset of mine. It is owed to the Trust so all the beneficiaries that exist now and those that may exist in the future can benefit from it as my parents intended as discussed below. I noted this debt as a liability on my 2017 CIS . . . . However, the [c]ourt gave it no weight in its [r]emand [d]ecision.

Regarding the RJ Groves Trust, which she described as a special needs trust, plaintiff certified:

My parents created the 2013 RJ Groves Trust prior to their demise(s) in 2014 and 2016. According to the rules that govern the Special Needs Trust, I am a qualified eligible beneficiary due to my status of being deemed permanently disabled per the SSA . . . . Since I am a Disabled Beneficiary I am not eligible to be a Trustee . . . so I have no access or authority to the Trust of any sort. The Trust is not a bank account but a legal entity. The Trust is not an asset of mine. It does not provide a steady flow of income to me or any other beneficiary for that matter. It does not allow for distributions to cover monthly expenses . . . . It was created to exclusively provide certain special needs benefits as outlined in the Trust's governing documents . . . . Furthermore, these benefits are not guaranteed and are at the discretion of the Trustee(s) that oversee the Trust.

According to plaintiff, other disabled family members are also beneficiaries of the Trust. Plaintiff explained:

Defendant falsely accuses me of receiving a steady flow of alleged hidden income every year since my mother died in 2016. This is not true. The rules that govern the Special Needs Trust are clear[;] it <u>does not</u> provide a steady flow of income . . . . At the end of

8

each year, <u>IF</u> the Trust had distributed any benefit(s) on my behalf the Trust issues me a K-1 for tax reporting purposes. This K-1 information is reflected on the property line(s) of my income tax returns for the years 2017, 2018 and 2019 as those were the only years for which the Trust distributed a benefit on my behalf. The Trust did not distribute anything on my behalf in 2020 . . . .

Plaintiff refuted defendant's assertion she had not disclosed in her 2017 CIS funds she had received from "an inherited annuity account" in 2016. She pointed out her tax returns demonstrated the purported payment was actually a rollover of a 401K account she had disclosed and was not an inherited annuity.

Regarding the South Carolina action, plaintiff stated she had represented herself in that action and had produced "all kinds of financial documents," including tax returns, banking statements, and 401K account statements, none of which demonstrated "a steady monthly flow of income."

Defendant submitted a reply certification in which he conceded the purported "inherited annuity account" was an IRA rollover and that her 2020 tax return did not show any income from the trust. He maintained plaintiff's alleged failure "to disclose ALL of the details and specifics including the trustee's name and value of the trust [and] to include all required tax documents for the trust should be considered by this [c]ourt as a willfully false statement in regards to established assets."

9

A Family Part judge heard argument and on March 15, 2024, entered an order denying defendant's motion and granting in part and denying in part plaintiff's cross-motion. After ordering an audit, the judge held the outstanding amounts owed by defendant would be reduced to a judgment, and imposed a $25 daily sanction on defendant if he did not comply with all outstanding arrears by April 30, 2024.

In a comprehensive, twenty-two-page opinion, the judge rejected defendant's various arguments concerning plaintiff's and her attorney's alleged misrepresentations or withholding of evidence. The judge found "there is no evidence of misconduct by [p]laintiff's attorney such that he would not be protected by the litigation privilege" and that the attorney had "presented his view during the litigation on the nature of the special needs trust, the extent of [p]laintiff's access to the special needs trust, and the fact that it did not increase [p]laintiff's income." The judge also found the attorney, rather than withholding information regarding the special needs trust, had specifically addressed it in his certification of services. The judge also acknowledged plaintiff had disclosed on her 2017 CIS loans she had taken from her mother's estate account. The judge concluded that "[w]hile [d]efendant asserts that [p]laintiff hid the trust from him, the proofs presented by each party fall in [p]laintiff's favor" and that

"[r]egardless of the characterization of the funds used by [p]laintiff that came from her mother's estate, [d]efendant boldly and incorrectly suggests that existence of the funds was not disclosed when it clearly was."

Regarding the funds plaintiff had received from her mother's estate, the judge found the funds, "in the manner received, logically and reasonably were taken because of the longstanding arrears" defendant had not paid. The judge explained the impact that defendant's failure to pay his obligated support had on plaintiff and the need for plaintiff to obtain money from other sources:

> In failing to timely meet his financial obligations, [d]efendant created an untenable situation for [p]laintiff where she had to use any resource she could to financially survive. The [c]ourt finds that [p]laintiff had a specific need to borrow the funds from the estate account and absent that need, [t]he funds would have been transferred to the special needs trust as contemplated by [p]laintiff's mother's Will from which she would have received funds only based on the trustee's sole discretion. The [c]ourt cannot find with this restriction on [p]laintiff's access that the special needs trust could be considered a consistent source of income for support calculation purposes.

The judge concluded "[p]laintiff has satisfactorily demonstrated that any amounts she took from the estate account of her mother were used towards debts that were accumulated in large part due to [d]efendant's failure to pay his support and college obligations."

11

Regarding defendant's arguments concerning the special needs trust, the judge found defendant was "repeat[ing] the same arguments he made in 2017 concerning the special needs trust which he has always characterized as an inheritance."  The judge held:

> Defendant's assertion that the special need trust is an inheritance [wa]s addressed and discredited by [plaintiff's counsel] who indicate[d] that [d]efendant's characterization of the special needs trust as an inheritance is incorrect. . . .  The [c]ourt adjudicated this question by ultimately not considering the special needs trust as a source of income for [p]laintiff in its decision on August 8, 2017.  Defendant's disagreement with this conclusion does not mean the issue is not already addressed, resolved, and, therefore, barred as res judicata.  By the [c]ourt not referencing a party assertion, exhibit, or other proffered information, [d]efendant appears to argue, incorrectly, that this means the [c]ourt did not consider it in its deliberation. A [c]ourt opinion need not address each and every piece of evidence presented by a party, especially where it is superfluous evidence and unpersuasive to the [c]ourt. The information [d]efendant seeks this [c]ourt to now consider was before the [c]ourt when it rendered the August 8, 2017[] decision.  The detailed information ascertained in the South Carolina proceeding does not change this fact.

The judge found "[d]efendant's suggestion that the findings by the South Carolina [c]ourt in 2021 should alter this [c]ourt's 2017 decision is not factually supported."  She explained that "as the [c]ourt in South Carolina noted in its 2021 opinion, while [p]laintiff had not disclosed certain bank accounts which

contained funds she had taken from her mother's estate, [d]efendant came before that [c]ourt seeking relief with unclean hands." She noted the South Carolina court ultimately "rejected [d]efendant's contentions and denied him relief."

The judge found it "appropriate and justified to modify the August 8, 2017[] [o]rder and direct that [d]efendant pay [p]laintiff directly in the amount of the counsel fee award of $87,525.11 by April 30, 2024, or face sanctions." Although the judge referenced the August 8, 2017 order, the fee award was contained in the July 14, 2017 order, which was subsequently modified in other respects by the August 8, 2017 order. The judge reduced the amount to a judgment "given the history of th[e] case and [d]efendant's arguments which have not persuaded the court."

In this appeal, defendant presents the following arguments:

Point I:

THE TRIAL COURT ERRED BY FAILING TO SCHEDULE A HEARING TO ADDRESS ALLEGATIONS OF FRAUD ON THE COURT.

Point II:

THE TRIAL COURT ERRED BY ISSUING CONCLUSORY FINDINGS AND FAILING TO ANALYZE THE RECORD WITH SUFFICIENT SPECIFICITY TO SUPPORT FINDINGS OF FACT AN CONLUSIONS OF LAW SUBJECT TO APPELLATE REVIEW.

13

Point III:

> THE COURT ERRED BY FAILING TO SCHEDULE A HEARING. VOLUMINOUS OPPOSING PAPERS COULD NOT BE RESOLVED WITHOUT A PLENARY HEARING TO ADJUDGE CREDIBILITY.

Point IV:

> WITHOUT THE REQUISITE INFORMATION FOR A LOADSTAR ANALYSIS THE COURT ERRED BY ORDERING A FEE AWARD.

Unpersuaded by those arguments, we affirm.

## II.

Our review of a Family Part judge's findings is limited. Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022). "We will reverse only if we find the judge clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).

A-2592-23

That deference applies to a Family Part judge's decision regarding a motion to amend a marital-support obligation.  Cardali v. Cardali, 255 N.J. 85, 107 (2023); see also Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) ("Whether [a support] obligation should be modified . . . rests within a Family Part judge's sound discretion.").  Thus, a Family Part judge's decision regarding a support obligation should not be disturbed unless "the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013).  We review questions of law de novo.  Cardali, 255 N.J. at 107.

A movant in the Family Part "is entitled to a plenary hearing only when demonstrating the existence of a genuine issue of material fact entitling the party to relief through competent supporting documents and affidavits."  Bermeo v. Bermeo, 457 N.J. Super. 77, 83 (App. Div. 2018) (finding no abuse of discretion by the motion judge in ruling on an alimony motion without conducting a plenary hearing).  "A plenary hearing should only be ordered where . . . there are 'facts in dispute material to a resolution of the motion . . . .  Conclusory allegations should be disregarded.'" G.M. v. C.V., 453 N.J. Super. 1, 13 (2018) (quoting Kanaszka v. Kunen, 313 N.J. Super. 600, 608 (App. Div. 1998)).

A-2592-23

Applying those principles to this case, we perceive no legal error nor abuse of discretion in the Family Part judge's decision to deny defendant's motion and to grant in part and deny in part plaintiff's cross-motion. In his 2022 motion, defendant sought to terminate or modify his alimony obligation based on his claim plaintiff and her attorney had misrepresented or withheld information about her alleged inheritance in her February 17, 2017 CIS. But as the Family Part judge held, defendant had raised those arguments in the Family Part proceedings in 2017.

The record supports that conclusion, and defendant conceded it in his brief in this appeal when he faulted the Family Part judge in 2017 for "opt[ing] not to address allegations of fraud, and enter[ing] an order on the remand without addressing the issue of fraud." In his May 2, 2017 "supplemental certification," defendant asserted plaintiff had "not been forthcoming" regarding her "current financial position," specifically criticizing her for not disclosing "significant assets that [p]laintiff ha[d] recently inherited" following her mother's death. Plaintiff's counsel responded to that argument in his certification of services. The Family Part judge decided the issues on remand and entered the 2017 orders. Defendant appealed those orders, arguing before this court "THE TRIAL COURT ERRED WHEN IT DID NOT REQUIRE PLAINTIFF TO DISCLOSE

16

THE TERMS AND AMOUNT OF HER INHERITANCE" and "THE TRIAL COURT WAS NOT ABLE TO PERFORM A PROPER ALIMONY ANALYSIS DUE TO PLAINTIFF'S WITHHOLDING OF SIGNIFICANT INHERITANCE, ASSETS AND TRUST FUNDS AVAILABLE TO HER." Corrello II, slip op. at 2. We affirmed the 2017 orders, finding "defendant's arguments are without sufficient merit to warrant extended discussion in a written opinion." Id. at 4. Nothing in the record indicates defendant subsequently petitioned the Supreme Court for review of our opinion. Thus, defendant is bound by it. See In re Vicinage 13 of the N.J. Super. Ct., 454 N.J. Super. 330, 341 (App. Div. 2018) ("Res judicata prevents a party from relitigating for a second time a claim already determined between the same parties.").

The Family Part judge also correctly determined the South Carolina child-support proceedings in 2021 did not provide a basis for terminating or modifying defendant's alimony obligation based on alleged misrepresentations by plaintiff, especially when the South Carolina court concluded defendant had "come to [that] court with unclean hands" and had denied his requested relief. Corrello v. Corrello, No. 2020-DR-26-0716 (S.C. C.P. Horry Cnty. July 28, 2021) (slip op. at 11). Whatever the South Carolina court said in that case about the New Jersey proceedings that were not before it and however plaintiff, without the

assistance of counsel, described her mother's estate and the trust in that case, it is clear to this court the issue of plaintiff's purported inheritance was disclosed to the Family Part in the 2017 proceedings.

Moreover, the record fails to support defendant's assertion plaintiff misrepresented or failed to disclose anything in her February 17, 2022 CIS. In her Last Will and Testament, plaintiff's mother, if her husband died before her, left her real property to her daughter Jeanie F. Groves, not plaintiff, and her residuary estate, less payment of certain "death charges," to "the Trustee of the RJ GROVES 2013 TRUST, to be added to the trust fund held thereunder and to be disposed of in accordance with the terms thereof." Thus, plaintiff's mother did not bequeath plaintiff any pecuniary asset and any funds plaintiff received from the estate could only be considered to be a loan, which she reported on her February 17, 2017 CIS. As disclosed in plaintiff's 2017 tax return, plaintiff received $9,100 from the trust in 2017. But nothing in the record indicates she received that distribution before she filed the February 17, 2017 CIS. In his merits brief, defendant faults plaintiff for not disclosing the name of the trustee, the names of the other beneficiaries, the total disbursements from the trust, and the names of the recipients of those disbursements. But nothing in the 2017 CIS

18

form required her to disclose the names of or distributions to others involved in the trust.

Despite defendant's allegations to the contrary, we see no fraud on the court.

> [A] fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."
>
> [Triffin v. Automatic Data Processing, Inc., 411 N.J. Super. 292, 298 (App. Div. 2010) (quoting Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007)).]

See also Fellerman v. Bradley, 99 N.J. 493, 504 (1985) (describing "fraud on the court" as "[m]isleading, inconsistent, or deceitful actions directed at the court itself denote a species of deceptive conduct that . . . directly interferes with the judicial process").  Failing to meet that standard, defendant did not establish fraud nor any basis to overturn the 2017 orders this court previously affirmed.

The Family Part judge did not abuse her discretion in deciding the motion and cross-motion without conducting an evidentiary hearing.  She did not make any credibility determinations in making that decision but relied on evidence in the record.  And defendant did not demonstrate any genuine issues of material

fact warranting a hearing. His "[c]onclusory allegations" were not sufficient to merit an evidentiary hearing. G.M., 453 N.J. Super. at 13.

Finally, we address defendant's argument regarding the counsel-fee award. We apply a deferential standard of review to a Family Part judge's award of attorney's fees. Bisbing v. Bisbing, 468 N.J. Super. 112, 121 (App. Div. 2021). A Family Part judge's decision to grant or deny attorney's fees in a family action will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

The fee award defendant now challenges actually was issued in the July 14, 2017 order, not the March 15, 2024 order that is the subject of this appeal. In the July 14, 2017 order, the Family Part judge ordered defendant to pay plaintiff's lawyer $87,525.11 in fees and costs. In his 2022 motion, defendant sought to vacate that award, and to terminate or modify his alimony obligation, based on plaintiff's alleged misrepresentations and withholding of information.[3] As we have discussed, the Family Part judge denied all aspects of his motion in

_____

[3] Defendant in his notice of motion referenced a "[t]he attorney fee award from 8/8/17." We understand he meant to reference the July 14, 2017 order because that is the order that contains the counsel-fee award. The August 8, 2017 order modified in part the July 14, 2017 order but not with respect to the fee award.

20

the March 15, 2024 order and granted, in large part, plaintiff's cross-motion to enforce prior orders, including the 2017 orders. The judge in the March 15, 2024 opinion directed defendant to pay the fee award directly to plaintiff instead of her lawyer, who had died in the interim. As set forth in the order, the judge also reduced all of the outstanding amounts defendant owes plaintiff, including the fee award, to a judgment.

Defendant doesn't complain about the judge directing he pay plaintiff directly or reducing the amount owed to a judgment. Instead, he argues the court failed to consider plaintiff's alleged bad faith and failed to analyze properly her entitlement to a fee award. Any argument about the judge's failure to analyze properly plaintiff's entitlement to the 2017 fee award should have been made in defendant's appeal of the 2017 orders. In fact, as we noted in our 2018 opinion, defendant had challenged the fee award in that appeal, arguing "THE TRIAL COURT ERRED IN ITS AWARD OF ATTORNEY FEES AND SHOULD BE REVERSED." Corrello II, slip op. at 3. We affirmed the 2017 orders, finding defendant's arguments "without sufficient merit to warrant extended discussion in a written opinion." Id. at 4. And any argument the fee award should be modified or vacated due to plaintiff's alleged bad faith is without merit for the

reasons set forth in this opinion. Accordingly, we affirm the March 15, 2024 order.

To the extent we have not expressly addressed any other arguments, we have considered them and find they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division