**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3437-23

FALAD PROPERTIES, LLC,

     Plaintiff-Appellant,

v.

BOROUGH OF ATLANTIC
HIGHLANDS A MUNICIPAL
CORPORATION OF THE
STATE OF NEW JERSEY, AND
ITS GOVERNING BOARD,

     Defendants-Respondents.

_____

Argued September 24, 2025 – Decided November 19, 2025

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3877-23.

David A. Faloni, Sr. argued the cause for appellant (Faloni Law Group, LLC, attorneys; David A. Faloni, Sr., on the briefs).

Marguerite M. Schaffer argued the cause for respondents (Rainone Coughlin Minchello, LLC,

attorneys; Marguerite M. Schaffer, of counsel and on the brief; Alyssa Puccio, on the brief).

PER CURIAM

Plaintiff Falad Properties, LLC (Falad) appeals from the May 30, 2024 Law Division order dismissing with prejudice its December 6, 2023 complaint against defendants Borough of Atlantic Highlands and its governing board (collectively, the Borough). We affirm.

## I.

Relying on the Five-Year Exemption and Abatement Law (the Five-Year Law), N.J.S.A. 40A:21-1 to -21, the Borough passed Ordinance 9-95 (the ordinance) in 1995. Later codified in the Borough's code, the ordinance permitted five-year tax abatements for new commercial and multi-family residential buildings. Atlantic Highlands, N.J. Code § 323-6 to -8.

In 2012, 35 1st Avenue Associates, LLC (35 1st Avenue) subdivided Block 117, Lot 8 in the Borough's commercial district into two lots, 8.01 and 8.02. Through a related entity, 35 1st Avenue received the Borough's approval to raze the existing building on Lot 8.02 and construct a mixed-use building. The project included two commercial spaces and sixteen residential units, four of which were designated affordable housing. Atlantic Highlands Associates,

2

LLC, doing business as Kalian Companies (Kalian), purchased the property in June 2015 and began construction on the project.

In mid-2017, Kalian applied for a five-year tax phase-in abatement agreement for Lot 8.02, which the Borough granted via resolution on September 13, 2017. The abatement agreement contained a waiver provision, wherein the Borough made no representation or warranty as to the ordinance. Thus, if the ordinance or abatement agreement were deemed void or legally ineffective by a board or court, the agreement would be terminated, and Kalian would be liable for any tax obligations as determined by the board or court. Kalian also agreed to waive any claims against the Borough and hold the Borough harmless from any claims arising from the abatement agreement.

Consistent with the Borough's ordinance, if Kalian conveyed the property during the abatement term, the agreement would terminate unless the new owner applied for, and the Borough granted, a continuation of the agreement and assignment of the abatement. The decision whether to grant a continuation was binding on any successor in title and solely in the Borough's discretion, provided continuing the abatement remained in the Borough's best interests.

The abatement phase-in began on January 1, 2018. In September 2018, after completing construction, Kalian sold both properties to Falad. Neither

3

Kalian nor Falad notified the Borough of the sale, and Falad did not apply for a continuation and assignment of the abatement agreement.

After learning of the sale, the Borough canceled the abatement agreement at its October 10, 2018 meeting. The memorializing resolution declared that in its sole discretion, the Borough determined continuation and assignment of the tax abatement was not in its best interests. The Borough did not inform Falad of its consideration of the matter or provide Falad an opportunity to request a continuation and assignment of the abatement before the meeting.

The Borough notified Falad of the termination by telephone on December 14, 2018. In response to Falad's inquiry about obtaining a continuation and assignment, the Borough's counsel advised the property did not meet the requirements of the Five-Year Law because it was not located in an "area in need of rehabilitation" as designated in the statute.

In February 2019, Falad filed a complaint in lieu of prerogative writs, alleging breach of contract, unjust enrichment, and civil rights violations. Falad alleged it and the prior property owners "negotiated with the [Borough] in good faith to remediate extensive contamination of the . . . [p]roperty to meet [Department of Environmental Protection] requirements and then construct" the building. In exchange for the abatement, the Borough received "affordable

4

housing which met its obligations and goals in upgrading the business district and add[ed] additional tax base through the phase in."

Falad claimed the Borough wrongfully terminated the abatement agreement by failing to provide notice of its consideration of the termination or evaluate the new owner's continuous use as required by N.J.S.A. 40A:21-12. Falad sought to compel the tax assessor to bill the correct amount, require the Borough to comply with the abatement, rescind the resolution cancelling the abatement, and reimburse the overpaid property taxes, along with other relief.

The Borough answered the complaint and raised affirmative defenses, contending the property was ineligible for a tax abatement under the Five-Year Law, as it was not located in "an area in need of rehabilitation." The Borough also contended the abatement terminated upon conveyance of the property to Falad because neither Kalian nor Falad applied for and obtained approval of a continuation and assignment of the abatement. Additionally, the Borough asserted Falad waived its claims by failing to investigate the legality of the abatement before purchasing the property. The Borough sought judgment declaring the abatement void and other relief.

In a May 31, 2019 case management order, the judge directed Falad to file an amended complaint solely asserting a prerogative writs claim for relief. The

judge declined to consider Falad's claims for breach of contract, unjust enrichment, and violation of civil rights, deeming them non-cognizable in an action in lieu of prerogative writs. Instead, the order indicated Falad was permitted to take any "necessary and appropriate" action regarding those claims.

After Falad's motion for reconsideration of the order was denied, it filed an amended complaint in lieu of prerogative writs, omitting the other three causes of action but seeking the same relief as the initial complaint. The Borough filed an amended answer and affirmative defenses, seeking the same judgment as in its original answer.

After conducting a hearing with stipulated facts and live testimony from a Falad shareholder and Borough officials, the judge concluded the ordinance did not comport with statutory requirements. In her November 15, 2021 amended written opinion, the judge determined the ordinance failed to comply with the Five-Year Law because it did not "differentiate for the purposes of determining eligibility . . . among the various neighborhoods, zones, areas[,] or portions of the designated area in need of rehabilitation." The judge also found the Borough did not designate any area or areas in need of rehabilitation, contrary to the statute's mandate, and the ordinance's legislative intent did not comport with the statute's intent. The statute's goal was to promote

A-3437-23

improvements in areas already requiring rehabilitation because of deterioration or decline, but the Borough's tax abatements were designed for use "in areas threatened with economic and social decline."

The judge also expressed concerns about the Borough's termination of the abatement agreement as inconsistent with the statute. N.J.S.A. 40A:21-12(a) provides that an abatement agreement "shall continue" after a property transfer if the new owner continues "to use the property pursuant to the conditions which qualified the property," but the Borough granted itself sole discretion to terminate an abatement agreement after a property transfer. The judge concluded the ordinance was void because it was unauthorized by and contrary to the statute and, therefore, the abatement agreement was void. Because the agreement was unenforceable, she denied Falad's requests for relief and affirmed the Borough's termination of the abatement.

In June 2022, Falad filed a second lawsuit asserting breach of contract; unjust enrichment, negligence, civil rights violations under 42 U.S.C. § 1983, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -229, and violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. Referring to the order in the prerogative writs action, the complaint alleged the Borough "unilaterally and without notice maliciously conspired to rescind the

abatement," and the Borough's employees "intentionally lied to the Borough's council to obtain their vote, stating the abatement was terminated because of the sale of the . . . [p]roperty when in fact it was terminated as it was illegal, and the [Borough] never had authority to grant any tax abatements." The Borough knew or should have known it lacked the statutory authority to grant the abatement. Falad again sought injunctive relief and damages. The Borough moved to dismiss under Rule 4:6-2(e). It argued the doctrines of collateral estoppel, res judicata, and the entire controversy doctrine barred Falad's claims because they sought the same relief as in the prerogative writs action.

On January 11, 2023, the motion judge issued an opinion and order dismissing the complaint without prejudice. The judge rejected the Borough's arguments for procedural bars because the claims were not previously adjudicated. However, the judge found Falad's complaint was entirely dependent on its ability to obtain the tax abatement and, because the ordinance was declared invalid, the claims were legally unsustainable.

On December 6, 2023, Falad filed a third complaint, which is the subject of this appeal, claiming promissory estoppel based on intentional misrepresentations and fraud in the inducement. The complaint reiterated Falad's prior allegation the Borough administrator intentionally lied to the town

council, advising it to cancel the abatement based on the sale of the property, when the administrator knew the sale did not terminate the abatement under the statute. Falad further claimed the abatement was valid until the judge voided it, so the Borough should reimburse taxes Falad paid before the judge's decision.[1]

The complaint also alleged the Borough intentionally and fraudulently induced Falad and its developers to invest and construct in the Borough through the tax abatement, on which Falad relied, before the Borough then terminated the abatement. The complaint sought compensatory and punitive damages, pre-judgment interest, and attorneys' fees, along with other relief.

The Borough again moved to dismiss the complaint, asserting Falad's claims were precluded by the entire controversy doctrine, res judicata and waiver. Falad opposed the motion. On May 29, 2024, the motion judge heard argument and issued an oral decision dismissing the complaint. In doing so, she reviewed both prior complaints, noting the reasons each action had been dismissed. The judge then found:

> Here, . . . the 2023 complaint offers new claims for intentional torts. While [Falad] asserts that the 2019 and [20]22 complaint[s] never addressed these issues,

---

[1] In August 2019, the Borough issued Falad an increased tax bill for 2019, along with an additional assessment for November and December 2018, to reflect taxes owed after the abatement was canceled. According to Falad, it paid $125,097.49 in excess property taxes.

that's because those issues weren't raised in the earlier complaint. Indeed, this is the first time that [Falad] has raised these claims to be litigated. However, what [Falad] fails to concede is that all of the claims sound from the same central issue being the validity of the tax abatement, which has already been litigated and decided, and whether it should have been terminated.

Pursuant to the entire controversy doctrine, all parties involved in litigation should present all of the claims [and] defenses that are related to the underlying controversy in one single action. [Falad]'s premise for the [cause] of action in its 2023 complaint [is] that they're related to the underlying controversy. [Falad] did have an attempt to litigate all of its claims in the 20[22] action, as well . . . . While it may be true that [Falad] never explicitly brought these actions in the prior suits, this is not a sufficient reason for permitting them now. In fact, this is the primary reason for the existence of the entire controversy doctrine to preclude situations like this.

Because the judgment in the 2022 action was valid and final on the merits, the parties in both actions were identical, and the claims arose out of the same transaction or occurrence, the judge dismissed the complaint as barred by the entire controversy doctrine. This appeal followed.

II.

We review de novo a trial court's decision on a motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). On

review, we examine the motion "by the same standard applied by the trial court; thus, considering and accepting as true the facts alleged in the complaint, [and] determin[ing] whether they set forth a claim upon which relief can be granted." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).

We apply a mixed standard of review to determine whether a trial court erroneously applied the entire controversy doctrine to bar claims. "[T]he decision to apply the [entire controversy] doctrine, as an equitable principle, 'is left to judicial discretion.'" Francavilla v. Absolute Resols. VI, LLC, 478 N.J. Super. 171, 178 (App. Div. 2024) (quoting 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011)); see ibid. (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro¸ 201 N.J. 123, 125 (2009)) (explaining the application of the doctrine "is left to judicial discretion based on the factual circumstances of individual cases"). Thus, the "abuse of discretion standard applies to our review of the decision to apply the doctrine." Ibid. We only reverse the trial court's discretion in applying the doctrine if that "exercise of discretion was 'manifestly unjust' under the circumstances." Ibid. (quoting Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011)).

"We review de novo the law guiding the trial court's determination as to the [application of the] entire controversy doctrine" in barring the subsequent action. Ibid. On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (alteration in original) (quoting Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)).

The entire controversy doctrine is an equitable principle requiring a party "to assert in one action all claims arising from a single controversy." Thomas v. Hargest ex rel. Est. of Hargest, 363 N.J. Super. 589, 595 (App. Div. 2003); see Carrington Mortg. Servs., LLC v. Moore, 464 N.J. Super. 59, 68 (App. Div. 2020) ("Subject to equitable considerations, the doctrine disfavors successive suits regarding the same controversy."). Subject to exceptions not applicable here, Rule 4:30A provides, "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."

The core purpose of the doctrine is three-fold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." In re Est. of

12

Gabrellian, 372 N.J. Super. 432, 444 (App. Div. 2004) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). Thus, the doctrine promotes the efficient administration of justice and fairness to all parties with a material interest in the action. See Olds v. Donnelly, 150 N.J. 424, 432-34 (1997).

"The 'polestar of the application of the rule is judicial "fairness,"'" Wadeer v. New Jersey Manufacturers Insurance Company, 220 N.J. 591, 605 (2015) (quoting DiTrolio, 142 N.J. at 272), and the doctrine is ultimately one of equity, with its application left to judicial discretion based on the circumstances of each case, Carrington Mortgage Services, LLC, 464 N.J. Super. at 68. "When considering fairness to the party against whom the entire controversy doctrine is invoked, . . . [the court] must consider whether or not the party had a 'fair and reasonable opportunity to have fully litigated that claim in the original action.'" Karpovich v. Barbarula, 150 N.J. 473, 481 (1997) (quoting Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)).

Application of the doctrine centers on whether the claims arise from the same transaction or a series of related transactions. DiTrolio, 142 N.J. at 267. A common nucleus of facts linking separate claims requires their evaluation in one proceeding. Id. at 267-68. Stated differently, "[c]auses of action which arise out of the same transaction or transactional circumstances are considered

duplicative," and thus must be brought in the same proceeding, "if the 'factual circumstances giving rise to the controversy itself' are the same." J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 454-55 (App. Div. 2015) (quoting Brennan v. Orban, 145 N.J. 282, 290 (1996)).

"If a party fails to assert a claim that the entire controversy doctrine requires to be joined in a given action, a court may bar that claim." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 98 (2019). Dismissal of a suit under the doctrine is with prejudice. DiTrolio, 142 N.J. at 280. The doctrine's preclusive effect is broad, more so than res judicata and the Restatement (Second) of Judgments approach governing the preclusive effect of failure to interpose permissive counterclaims. Bank Leumi USA v. Kloss, 243 N.J. 218, 225-27 (2020).

On appeal, Falad argues the entire controversy doctrine does not preclude its claims, which sound in promissory estoppel and fraud in the inducement, because they were never litigated or adjudicated in any prior suit. It further maintains the first judge severed and preserved the damages claims in the prerogative writs action, permitting Falad to pursue the claims after resolution of the abatement's validity. Thus, Falad asserts the third complaint should not be barred by the entire controversy doctrine.

Falad's contentions conflate the entire controversy doctrine with collateral estoppel and res judicata. Collateral estoppel, also referred to as issue preclusion, "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Twp. of Jackson v. Getzel Bee, LLC, 480 N.J. Super. 592, 607 (App. Div. 2025) (quoting In re Vicinage 13 of the N.J. Superior Ct., 454 N.J. Super. 330, 341 (App. Div. 2018)).

Res judicata, or claim preclusion, "prevents relitigation of a controversy between the parties." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002). A second suit is barred when under the doctrine it is based on "'substantially similar or identical causes of action and issues, parties, and relief sought,' as well as a final judgment." Wadeer, 220 N.J. at 606 (quoting Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989)).

The motion judge determined neither collateral estoppel nor res judicata was applicable in this case. Rather, the complaint was dismissed under the entire controversy doctrine because the judgment in the 2022 action was valid and final on the merits, the parties in both actions were identical, and the claims arose out of the same transaction or occurrence. We discern no basis to disturb the motion judge's determination.

15

We are also unpersuaded the case management order in the prerogative writs action, which preserved Falad's right to bring a cause of action for damages, precluded dismissal of this complaint. Pursuant to the order, Falad filed the 2022 complaint for damage, in which he could have brought the claims alleged here but did not do so. This third complaint is precisely the "successive suit[] regarding the same controversy" disfavored by the entire controversy doctrine. Carrington Mortg. Servs., LLC, 464 N.J. Super. at 68.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

16

A-3437-23